626 So.2d 786 (1993)
McKINNEY SAW & CYCLE and Commercial Union Insurance Co., Plaintiffs-Appellants,
v.
Ed BARRIS and Huskipower Outdoor Equipment Corporation, Defendants-Appellees.
No. 25208-CA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1993.
*787 Davenport, Files & Kelly by Thomas W. Davenport, Jr., Monroe, for appellants, McKinney Saw & Cycle and Commercial Union Ins.
Nelson & Hammons by John L. Hammons, Shreveport, for appellee, Phillip Davis.
Mayer, Smith & Roberts by Frank Carroll, Shreveport, for appellee, Sherburne Sentell.
Theus, Grisham, Davis & Leigh by J. Michael Hart, Monroe, for appellees, John Hammons and Nelson & Hammons.
Before MARVIN, BROWN and STEWART, JJ.
BROWN, Judge.
In an earlier products liability action a retailer, McKinney Saw & Cycle, Inc., was ordered to pay Phillip Davis 100% of his damages. Davis v. Husqvarna Motor, 561 So.2d 847 (La.App. 2d Cir.1990). McKinney filed this action seeking contribution from the distributor of the defective product or alternatively from Davis and his attorneys to recover 80% of what McKinney paid under the judgment. The trial court granted summary judgment, judgment on the pleadings and exceptions of no cause of action in favor of Davis and his attorneys. McKinney and its insurer, Commercial Union Insurance, appealed. We affirm.

FACTS
In 1982, McKinney Saw and Cycle, Inc., (McKinney), was the franchised dealer of power saws manufactured by Husqvarna Motor, a Swedish corporation, with factory representatives in the United States. Husqvarna's marketing plan required that McKinney deal directly with Husqvarna's Louisiana distributor, Huskipower Outdoor Equipment *788 Corporation (Huskipower). Thus, McKinney purchased all Husqvarna products and parts from Huskipower. Huskipower's representative for Louisiana was Ed Barris.
The vent valves on the Model 65 Husqvarna power saws that McKinney obtained from Huskipower were modified. This modification was made by the distributor, Huskipower, not the manufacturer. McKinney knew that the power saws had been modified by the distributor. In November 1982, McKinney sold a Model 65 Husqvarna power saw to Robert Singleton without advising Singleton of the modification. Davis, an employee of Singleton, was seriously burned in March 1985 when the model 65 Husqvarna power saw he was using burst into flames. The modification of the vent valve was ultimately determined to have been the cause of the accident.
Davis filed suit naming Husqvarna, Boswork Distributing Company (Boswork), McKinney and Commercial Union Insurance as defendants. The petition erroneously alleged that Boswork was Husqvarna's distributor of the power saw in question. In fact, Boswork did not become McKinney's distributor until 1984. McKinney, however, answered Davis's lawsuit stating that Boswork had distributed the power saw free of any modifications.
Davis nominally settled his action against Husqvarna and Boswork reserving his rights against McKinney and its insurer.[1] Davis then proceeded to obtain a trial date for his action against McKinney. Shortly before trial McKinney informed Davis that the power saw had in fact been distributed by Huskipower rather than Boswork and that it had been modified by the distributor. McKinney, however, made no effort to join Huskipower or Ed Barris as third-party defendants or to have them listed on a special jury verdict form as non-party tortfeasors whose fault could be apportioned in accordance with LSA-C.C.P. Art. 1812(C)(2). A trial jury found Davis free of fault; McKinney was assessed with 20% fault and Husqvarna was found 80% at fault. Thus, McKinney was liable for 20% of the total damage award of $294,566.37. McKinney appealed. Davis answered the appeal.
This court found that the jury wrongly assessed Husqvarna with 80% fault. Under the products liability law in existence at that time, the manufacturer was not responsible if the product left its possession free of defects and it neither knew nor authorized any modifications. Davis v. Husqvarna, supra. Specifically, this court found that Ed Barris, the representative of Huskipower, admitted that personnel of his company altered the power saw by punching a hole in the vent valve. This alteration was found to have caused Davis's injuries. Husqvarna, 561 So.2d at 855.
This court found that because Husqvarna was not liable for Davis's injuries, McKinney and Husqvarna were not solidary obligors and "the release of a party who is subsequently determined not to be a solidary obligor does not affect the extent of liability of the remaining defendants." Husqvarna, 561 So.2d at 855. As the only remaining defendant, McKinney was responsible for 100% of the judgment. The court noted that "[I]f Huskipower is indeed a joint tortfeasor, then McKinney still has the option to pursue that company for contribution. LSA-C.C.P. Art. 1113." Husqvarna, 561 So.2d at 856.
Davis then sued Huskipower in state court. Because of diversity of citizenship, Huskipower removed the claim to federal court. Both the district court and the U.S. Fifth Circuit Court of Appeals found that the first paragraph of the release excused not only Husqvarna and Boswork, their agents, and their subsidiaries, but also "all other persons, firms, or corporations liable or claimed to be liable from all claims arising from the chain saw accident." The second paragraph articulated that the purpose of the release was to dispose of all possible liability of the defendants. The Fifth Circuit held that under the clear language of the release, Davis reserved his rights against McKinney but effectively discharged all other potential obligors [including *789 Huskipower]. Davis v. Huskipower, 936 F.2d 193 (5th Cir.1991).
While the federal court case was pending, McKinney and Commercial Union brought the present action seeking contribution from Ed Barris and Huskipower. An amended petition alleged that Ed Barris and Huskipower were joint tortfeasors and accordingly solidary obligors with McKinney as evidenced by the judgment of this court in Davis v. Husqvarna, supra. Huskipower and Barris sought injunctive relief in federal court based on the U.S. Fifth Circuit Court's decision. In argument, McKinney's counsel stated that a temporary restraining order was granted.
McKinney and Commercial Union filed a second amended petition to add Phillip Davis, Jr., his attorneys, Sherburne Sentell, John L. Hammons, and Nelson, Hammons & White, A Professional Law Firm, as defendants on the theory that McKinney and Commercial Union should be able to recover from these defendants the payment of a thing not due, i.e., 80% of the judgment which McKinney claimed was owed by Huskipower.
On August 7, 1992, McKinney and Commercial Union filed a third amended petition seeking to annul the judgment of this court in Davis v. Husqvarna, supra, due to ill practices by Davis, Sentell and Hammons. Specifically, McKinney and Commercial Union argued that the execution of the receipt and release dated December 3, 1987, precluded McKinney and Commercial Union from pursuing contribution.
These new defendants filed motions for summary judgment, judgment on the pleadings and peremptory exceptions of no cause of action. The court granted judgment on these motions in favor of defendants, Davis and his attorneys. McKinney and Commercial Union appealed.

DISCUSSION
Plaintiffs claim that if they are prohibited from pursuing contribution from Barris and Huskipower due to the release dated December 3, 1987, then the judgment rendered by this court in Davis v. Husqvarna Motor, 561 So.2d 847 (La.App. 2d Cir.1990), assigning McKinney and Commercial Union with 100% liability should be annulled because of ill practices. Plaintiffs state that the enforcement of said judgment would be unconscionable and inequitable to McKinney and Commercial Union.
In support, plaintiffs cite Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1070 (La.1983) which holds:
According to article 2004 of the Code of Civil Procedure, any final judgment obtained by fraud or ill practices may be annulled. Our jurisprudence sets forth two criteria to determine whether a judgment had been obtained by actionable fraud or ill practices: (1) when the circumstances under which the judgment was rendered show deprivation of legal rights of the litigant who seeks relief, and (2) when the enforcement of the judgment would be unconscionable and inequitable.
McKinney and Commercial Union allege that the "unintentional and inadvertent" acts of the defendants in the settlement release resulted in a judgment that would be unconscionable and inequitable. However, it was McKinney's own inactions in the original proceeding that may have deprived McKinney and Commercial Union of their subrogation rights. Specifically, McKinney knew prior to trial that Huskipower and Barris modified the power saw and that this modification exposed those parties to liability. Thus, McKinney could have joined Huskipower and Barris as third-party defendants or had them listed on the special verdict form as non-party tortfeasors. See LSA-C.C.P. Art. 1812(C)(2).
When the party seeking nullification of a judgment suffers a loss due in great part to that party's own actions or inactions, nullification, an equitable remedy, is improper. Bush v. Lee, 443 So.2d 702 (La.App. 5th Cir.1983). Because of McKinney's fault in not properly disclosing the true facts and in not joining Huskipower in the original proceeding, it now suffers the possible loss of a legal remedy. McKinney's present problems were caused by its own strategic decision.
We also note the case of Burkett v. Property of Douglas, 575 So.2d 888 (La.App. *790 2d Cir.1991), which holds that an action of nullity must be brought within one (1) year of the discovery of the fraud or ill practices. This one (1) year limitation is a period of peremption rather than prescription and may be raised on the court's own motion.
In the case sub judice, the decision of Davis v. Husqvarna Motor, supra, which McKinney and Commercial Union wish to have annulled, was rendered on May 9, 1990. The decision of Davis v. Huskipower Outdoor Equip. Corp., supra, which construed the release dated December 3, 1987, as including Huskipower and endangering McKinney's and Commercial Union's contribution rights, was rendered July 19, 1991. It was not until August 7, 1992, that the present action to annul the May 9, 1990, judgment was brought. At the latest, this was more than one year after the plaintiffs should have known that their contribution rights were in jeopardy. Therefore, this action is also untimely.
Plaintiffs further argued that if this court's judgment is annulled for ill practices, then the plaintiffs' right to recover for payment of a thing not due is clear. Plaintiffs cite Louisiana Health Service & Indemnity Co. v. Cole, 418 So.2d 1357 (La.App. 2d Cir. 1982), as support.
The theory of payment of a thing not due is based upon LSA-C.C. Art. 2301 et seq., specifically Arts. 2302 and 2304, which provide:
LSA-C.C. Art. 2302:
He who has paid through a mistake, believing himself a debtor, may reclaim what he has paid.
LSA-C.C. Art. 2304:
A thing not due is that which is paid on the supposition of an obligation which did not exist, or from which a person has been released.
McKinney's payment was not made through a mistake or on the supposition of an obligation which did not exist but instead out of compliance with this court's judgment in Davis v. Husqvarna, supra, which assigned McKinney with 100% liability.
We have ruled that this court's judgment assigning 100% liability to McKinney cannot be annulled due to ill practices of the defendants. A final judgment is immediately exigible in full. Newell v. Douglas E. Lanier, Inc., 336 So.2d 534, 536 (La.App. 1st Cir.1976). McKinney's and Commercial Union's payment of damages was made in compliance with that judgment and such judgment is considered a thing due and owing. Therefore, McKinney and Commercial Union have paid a thing that was due and owing and are not entitled to restitution.
For the above reasons, we find that the trial court did not err in dismissing plaintiffs claims.

DECREE
AFFIRMED. Costs to be paid by plaintiffs, McKinney and Commercial Union.
NOTES
[1] The receipt and release attached to the motion for summary judgment reflects a settlement of $4,000.