537 So.2d 1233 (1989)
DESIGN ASSOCIATES, INC.
v.
John J. CHARPENTIER, et al.
No. 88-CA-0703.
Court of Appeal of Louisiana, Fourth Circuit.
January 17, 1989.
Writ Denied March 30, 1989.
Charles F. Gay, Jr., Lisa D. Newman, Adams & Reese, New Orleans, for appellees.
Phillip A. Wittmann, Kyle Schonekas, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, for appellants.
Charles A. Verderame, Giraud, Cusimano & Verderame, New Orleans, for intervenors/appellees Amato & Creely.
Before GARRISON, KLEES, CIACCIO, LOBRANO and ARMSTRONG, JJ.
LOBRANO, Judge.
This is an appeal from the trial court judgment which set aside a default judgment taken in a previous action.
In the previous matter, Design Associates, Inc. (Design) filed a suit on open account against Dawn Offshore Towing, Inc. (Dawn) and John Charpentier. That suit was filed on October 16, 1984. Charpentier was personally served on January 30, 1985, and Dawn was served on February 1, 1985.
On February 26, 1985 Gayle A. Reynolds of the law firm of Amato and Creely filed an ex parte motion for a forty-five day extension of time to file responsive pleadings. That motion was granted the next day, February 27th.[1]
When that motion for time was received by William Treeby and C. Lawrence Orlansky, attorneys for Design, they filed a motion to vacate the February 27th order, and alternatively, a rule to show cause why the defendants should not file responsive pleadings within five days. This motion was set for hearing on March 8, 1985. Two copies were sent to Reynolds, one which was mailed on February 28, 1985, and received by her on March 4th, the other which was served on March 7, 1985.
On March 7, 1985, Reynolds telephoned Treeby in an effort to avoid the hearing scheduled the next day. Reynolds testified that she had a prior commitment the next day, and that it was Treeby's suggestion that pleadings be filed within ten days, but that no mention was made that a default would be taken. Treeby testified that Reynolds agreed she would file responsive pleadings no later than March 18, 1985, and that he specifically warned her that her failure to do so would result in a default judgment.
Pursuant to that telephone agreement, Reynolds received by hand delivery on the same date a copy of a motion and order to vacate the previous forty-five day extension, and that responsive pleadings would be filed by March 18, 1985. The order specifically stated "under penalty of default". The motion also stated that Reynolds had no opposition. Reynolds acknowledges receiving this document on March 7th and that she did not voice an objection. The next day, March 8th, the trial judge signed the order.
No responsive pleadings were filed by the deadline, March 18th. On March 19th, a preliminary default was entered, and on March 26, 1986, the default judgment in *1235 favor of Design and against Dawn and Charpentier was confirmed. On March 28, 1985, ten days after the deadline had passed, Reynolds filed responsive pleadings asserting affirmative defenses. Treeby received a copy of those pleadings on the same date.
There was no further contact between the attorneys until mid-June 1985 when Reynolds, as attorney of record for Dawn and Charpentier, was served with a judgment debtor rule.
On October 28, 1985, Reynolds filed a petition to nullify the judgment and enjoin its execution. All counsel agree that on October 29, 1985 they met in Chambers with the trial judge and, apparently it was pointed out that a separate action for annulment had to be filed, and that it was improper to file it in the same proceedings. On October 31, 1985, the matter was dismissed without a hearing on the merits.
On November 12, 1985 the instant action was filed by Dawn and Charpentier against Design seeking to annul the default judgment on the grounds of fraud and ill practice under Code of Civil Procedure Article 2004. Design filed an exception of res judicata which was denied. The matter was tried on December 2nd, 3rd and 10th, 1987. The trial court concluded that there was no fraud or ill practice in the confirming of the default judgment, but held that Design's attorneys had an obligation to notify Reynolds of the judgment when they received a copy of her answer and affirmative defenses. The court reasoned that since the appeal period had not lapsed when Treeby and Orlansky became aware of the asserted defenses, their failure to tell Reynolds that they had obtained a judgment constituted ill practice under Article 2004. Design appeals that ruling.
ARGUMENTS
Design sets forth two arguments. First they argue that the October 31, 1985 judgment of the trial court dismissing plaintiffs' petition for injunction and annulment is res judicata as to the present proceedings. Second, they assert the trial court erred in the legal conclusion that failure to notify Dawn and Charpentier (thru their attorney, Reynolds) subsequent to obtaining the default judgment constitutes an ill practice within the meaning of Code of Civil Procedure Article 2004. In particular they urge that that article applies to the "obtaining" of a judgment, not to actions taken subsequent to the judgment. They argue that no obligation was created by the untimely pleadings filed by Reynolds, nor was there an agreement to notify her of the default judgment. Defendant relies on the expert testimony of Mr. Curtis Boisfontaine, and distinguishes Kent Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983) relied on by plaintiffs.
Dawn and Charpentier argue that had they been advised of the default judgment they would have been able to assert their defenses by way of motion for new trial and/or appeal. They urge that once Treeby and Orlansky learned Reynolds was asserting defenses, an obligation arose on their part to notify her of the judgment, and failure to do so deprived them of their "legal right to a defense." In support of their arguments, plaintiffs rely on the expert testimony of Mr. Harold Lamy and the Kem Search, Inc. case, supra.
ISSUE
We have reviewed the arguments, evidence and the trial judge's oral reasons and conclude that the issue is whether, upon receiving responsive pleadings from plaintiffs' attorney subsequent to obtaining a default judgment, (but before that judgment became definitive)[2] defendant had an obligation to notify plaintiff of the judgment, and whether failure to do so constitutes a "fraud or ill practice" within the meaning of Code of Procedure Article 2004.
RES JUDICATA
R.S. 13:4231 sets forth the essential elements of res judicata as follows:
"The authority of the thing adjudged takes place only with respect to what *1236 was the object of the judgment. The thing demanded must be the same; the demand must be between the same parties and formed by them against each other in the same quality."
The principal purposes of precluding relitigation of matters which have already been adjudicated include prevention of the unfairness which would result if a litigant were required to defend twice the merits of a single claim against him. Ward v. Pennington, 523 So.2d 1286 (La.1988).
Here the trial court denied the defendant's petition for injunction and petition to annul in the original action without stating reasons and without a hearing on the merits of the claim. Presumably, the trial court denied the petition to annul on strictly procedural grounds, that a separate action to annul the judgment is required. C.C.P. Art. 2004. Viso v. Favie, 502 So.2d 1130 (La.App. 4th Cir.1987) writ den. 503 So.2d 465 (La.1987).
Because it is clear that the merits of the claim was not decided on October 31, 1985, the trial court correctly denied Design's exception of res judicata on July 2, 1986.
Res judicata simply does not apply in these circumstances.

FRAUD OR ILL PRACTICE
We agree with the trial court that the evidence supports the conclusion there was no fraud or ill practice in the taking of the default judgment. Reynolds was well aware that she had until March 18th to file responsive pleadings. She agreed to that time limitation, and the copy of the order granting that extension was hand delivered to her before it was signed by the court. It specifically provided "under penalty of default." Reynolds admits she did not voice an objection to those terms. Consequently this was the only agreement between counsel, and there is no evidence to suggest that Reynolds should have been notified prior to the taking of the default.
The issue posed by this appeal, however, is a result of the Court's conclusion that when Reynolds mailed her answer to Treeby and Orlansky, she was sending them a message that she had defenses to the suit, and that because there was still time to file for a new trial and/or appeal, they had an obligation to answer that message. The trial court equated their failure to respond as a deception sufficient to create an ill practice. Although we disagree with the trial court's conclusion, its perception of the issue is correct.
Code of Civil Procedure Article 2004 provides:
"A final judgment obtained by fraud or ill practices may be annulled.
An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices."
The often cited case of Kem Search, Inc. v. Sheffield, supra, has provided interpretive guidelines in applying the above article. In that case our Supreme Court concluded that enforcement of a default judgment was unconscionable because the defendant failed to act due to his mistaken, and not unreasonable impression, that plaintiff's attorney would give him an opportunity to file pleadings if his settlement overtures were rejected. The Court broadened the scope of Article 2004 by stating:
"Thus the article is not limited to cases of actual fraud or intentional wrong doings, but is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable." Id. at 1070.
The jurisprudence subsequent to Kem Search, Inc., has generally interpreted that decision to require some type of express or implied agreement between the parties or their attorneys that no action will be taken by one without notifying the other. See, Berwick Bay Oil Co. v. Sunrise Shipping, 525 So.2d 239 (La.App. 1st Cir.1988); Allstate Insurance Co. v. Toups, 486 So.2d 304 (La.App. 3rd Cir.1986), writ denied; Strange v. Imperial Pools, Inc., 520 So.2d *1237 1039 (La.App. 3rd Cir.1987), writ denied; Newfield v. Gruber, 457 So.2d 1203 (La. App. 1st Cir.1984). Those cases rely on the principle that if a party fails to defend a suit because the opposing party does not warn him that a default judgment will be taken, "... this judgment may be annulled when the parties had an agreement to give notice of any action taken on the suit, or the defaulted party relied on facts which he reasonably believed created such an agreement, and the enforcement of the judgment would be unconscionable and inequitable." Kem Search, Inc., supra at 1070 (emphasis ours).
However, our jurisprudence is equally clear that an action for nullity is not a substitute for an appeal from a default judgment, Smith v. Cajun Insulation, Inc., 392 So.2d 398 (La.1980), nor is it the solution to legal rights lost through one party's negligence or failure to act. Berwick Bay Oil Co. v. Sunrise Shipping, supra. Furthermore it is not unconscionable or inequitable to enforce a default judgment even though a defendant had a valid defense but failed to timely assert it. Johnson v. Jones-Journet, 320 So.2d 533 (La.1975).
We find no statutory requirement that notice of a default judgment must be served on a defendant who was personally served with the lawsuit. La. C. C.Pro. Article 1913. And, we find no evidence in the record suggesting any agreement which required that Reynolds be notified if a default were taken. We therefore look to the facts and circumstances to determine if Reynolds could reasonably expect to be notified of the default judgment when she forwarded her answer.
Dawn and Charpentier's expert, Harold Lamy, testified that it is normal practice where an adverse party is represented by counsel to notify that opposing counsel prior to obtaining a default judgment. Although he has never been confronted with the unusual circumstances of this case (i.e. where notification is expected after default judgment), it was his opinion that good practice required notification where there was an opposing attorney.
Defendant's expert Curtis Boisfontaine, testified that the obligation to one's client came first, and concluded that fulfilling that duty outweighed any perceived duty to notify Reynolds.
Reynolds testified that she never expected her opponent to default her. She does admit, however, she never checked the record at the time of filing her answer to see if, in fact, a judgment had been rendered. In fact, she never checked the record subsequent to her answer until mid-June when she was served with the judgment debtor rule. And, she recognizes that she failed to pay attention to the order which granted the extension where it provided "under penalty of default."
Treeby and Orlansky testified they discussed with other members of their firm the question of whether they should notify Reynolds of the default judgment. They concluded that their obligation to their client was paramount, and that they had no responsibility to notify Reynolds. Orlansky admitted that they decided not to do anything until the appeal time lapsed and the judgment became definitive.
Neither party has cited, nor are we aware, of any case where the alleged ill practice occurs after a judgment is final, but before it becomes definitive. We are satisfied that there exists no statutory obligation which required that Reynolds be notified that a default judgment was entered. And, the jurisprudence suggests that ill practice occurs when one party takes some action, even unintentionally, which lulls the other party into a false sense of security and then takes advantage of it.
In this case Treeby and Orlansky did nothing subsequent to obtaining the judgment. The record does not suggest that they gave Reynolds the impression she would be notified once the judgment was taken, nor are there any facts which she could reasonably rely on to create such an impression. The only action taken was the answer filed by her, and we conclude this did not create an "ill practice" duty on Treeby and Orlansky. This conclusion is supported by the fact that Reynolds knew *1238 she was late in filing the answer and could have easily examined the record to determine if a default had been taken. Her failure to do so cannot be excused under the guise of placing a duty on her opponents to notify her. See, Berwick Bay Oil Co. v. Sunrise Shipping, supra.
This Court is reluctant to place an obligation on an attorney to advise his opposing attorney about those matters which he should know and where such advice would infringe upon his own client's legal rights. Our legal system is necessarily an adversarial one, and at some point in time during the course of litigation each attorney's responsibility to his own client is paramount. In this case we believe that point occurred when both attorneys agreed that responsive pleadings would be filed by March 18th.
For the reasons assigned we hold that the inaction of Design's attorneys does not constitute "a fraud or ill practice" within the meaning of Article 2004, and therefore reverse the trial court judgment.
REVERSED AND RENDERED.
ARMSTRONG, J., dissents with reasons.
ARMSTRONG, Judge, dissents and assigns reasons:
Considering the facts and circumstances of the case at bar, I feel we should defer to the discretion of the trial judge. In Kem Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983) the Louisiana Supreme Court examined La.C.C.P. art. 2004 and the trial court's discretion in ruling on actions to annul. The court stated:
"The trial court is permitted discretion in deciding when a judgment should be annulled because of fraud or ill practice. Miller v. Miller, 156 La. 46, 100 So. 45 (1924); In re Koonce, 380 So.2d 140 (La. App. 1st Cir.1979), writ denied 383 So.2d 23 (La.1980); Succession of Van Skye, 364 So.2d 1361 (La.App. 3rd Cir.1978). However, the ambit of a trial judge's discretion is determined by the reasons for its existence. State v. Talbot, 408 So.2d 861, 885 (La.1981) (on rehearing).
As Judge Friendly noted in Noonan v. Cunard Steamship Co., 375 F.2d 69, 71 (C.A.2d 1967), several of the most important reasons for deferring to the trial judge's exercise of discretion are: his observation of the witness, his superior opportunity to get "the feel of the case," see Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 216, 67 S.Ct. 752, 755, 91 L.Ed. 849 (1947), and the impracticability of framing a rule of decision where many disparate factors must be weighed, see Atchison, T. & S.F. Ry. v. Barrett, 246 F.2d 846 (C.A. 9th 1957). On occasion, when a problem arises in a context so new and unsettled that the rule-makers do not yet know what factors should shape the result, the case may be a good one to leave to lower court discretion. See Rosenberg, Judicial Discretion of the Trial Court, Viewed from Above, 22 Syracuse L.Rev. 635, 662 (1971)."
For this reason I respectfully dissent.
NOTES
[1] The court notes that although the requisite period of time had elapsed, no preliminary default had been entered at that time.
[2] A final judgment is one that determines the merits in whole or in part. La.C.C.Pro. Art. 1841. A judgment is definitive "when it has acquired the authority of the thing adjudged." La.C.C.Pro. Art. 1842.