566 So.2d 1071 (1990)
HOMER NATIONAL BANK, Plaintiff-Appellant,
v.
Dale Gibson NIX and Billie Jean Nix, Defendants-Appellees.
No. 21665-CA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 1990.
Writ Denied November 26, 1990.
*1072 Cook, Yancey, King & Galloway by Bernard S. Johnson, Shreveport, for plaintiff-appellant.
Hal V. Lyons, Shreveport, for defendants-appellees.
Before HALL, MARVIN and FRED W. JONES, Jr., JJ.
MARVIN, Judge.
After consenting to a judgment in its 1987 action against Dale and Billie Jean Nix to rescind the sale of immovable property, the plaintiff bank appeals a judgment dismissing its 1988 action to have the 1987 consent judgment annulled under CCP Art. 2004 on allegations that the Nixes obtained it by fraud or ill practices.
*1073 The abuse-of-discretion standard of review applies to the trial court's determination that the judgment was not obtained by fraud or ill practices. In re Koonce, 380 So.2d 140 (La.App. 1st Cir.1979), writ denied. We find no abuse of discretion and affirm. CC Art. 1954.

FACTS
In January 1987, the bank acquired by foreclosure most of the lots in a residential subdivision in Keithville, having earlier released some of the lots in the subdivision from its mortgage as houses were built on them. The bank mistakenly believed that all of the lots it acquired by foreclosure were unimproved.
In February 1987, Dale Nix contacted the bank to inquire about buying two lots, Nos. 113 and 120. Nix knew both lots were improved. The bank officer, J.T. Taylor, believed both lots were unimproved. Taylor's offer to sell each lot for $8,500 was accepted by Nix. The bank sold both lots by cash deed to Nix and his wife for $17,000 on March 4, 1987.
About two weeks later, the bank sued to rescind the sale, alleging error, lesion and fraud. The bank alleged that, after signing the deed, it discovered that Lot 120 had a house on it; that the Nixes refused to sign an act correcting the designation of Lot 120 to Lot 119, an unimproved lot, as the lot the bank intended to sell; and that the bank would not have sold the two lots for $8,500 each "had it known one of the lots was improved."
Although Lots 113 and 120 were mentioned in the bank's notice of lis pendens, the bank's demand for rescission was solely founded on the fact that Lot 120 was improved. The bank continued to believe Lot 113 was unimproved.
The Nixes filed an answer and reconventional demand, claiming about $3,000 in expenses, mostly property taxes, and $50,000 for embarrassment, humiliation and damages caused by the bank's accusations of fraud.
Nix rented the house on each lot to tenants. While the bank's 1987 action was pending, the bank officer, Taylor, went to the subdivision and talked to the tenant in the house on Lot 120. Taylor did not attempt to determine whether Lot 113 was improved, either on this visit, or when he first visited the subdivision and saw that Lot 120 was improved on March 4, 1987, immediately after he had delivered the $17,000 cash deed to the office of Nix's attorney.
On the trial date in November 1987, the parties consented to a judgment rescinding the sale of Lot 120, returning the $8,500 purchase price plus $2,000 in expenses to the Nixes, and dismissing all other claims with prejudice. The consent judgment expressly dismissed with prejudice the bank's claim for rescission of the sale as to Lot 113.
In April 1988, the bank filed its petition in the instant action, alleging that it did not discover, until after the November 1987 consent judgment was signed, that Lot 113 was also an improved lot. The bank sought to rescind the sale as to Lot 113, or, in the alternative, to annul the consent judgment and have it recast "to affect only Lot 120, which was the subject of [the bank's] original demand."
The Nixes filed an exception of "no right or cause of action," which the trial court treated as an exception of res judicata. The court sustained the exception as to the demand to rescind the sale as to Lot 113, reasoning that this demand was dismissed with prejudice in the consent judgment and that parties may, by consent judgment, resolve claims not contained in the petition. See McLain v. McLain, 486 So.2d 1044 (La.App. 2d Cir.1986). The court granted the bank leave to amend its petition to allege "facts which establish fraud or ill practices," for which the judgment could be annulled under CCP Art. 2004.
The bank filed an amended petition alleging that the Nixes and their counsel "knew, at the time of inducing plaintiff to enter into the consent judgment ... that Lot 113 was improved, and further knew that plaintiff and its counsel ... were unaware of this fact." The bank also claimed the Nixes gave misleading answers and withheld *1074 information about Lot 113 in their depositions which were taken in June 1987.
In the deposition Mrs. Nix was asked whether she knew "that one of the lots was improved and one was not improved." She answered, "Yes." At the trial of the action to annul, the bank's attorney testified that Mrs. Nix's answer "confirmed my belief which I had all along that Lot 113 was unimproved ... [since] the suit was about the fact that Lot 120 was improved." The attorney said that the request either by Mr. Nix or his counsel to "expressly recognize their ownership of Lot 113 [in the consent judgment] ... raised no red flags" because both lots were included in the bank's notice of lis pendens.
The bank's attorney asked Mr. Nix in the June 1987 deposition:
Q. For what purpose did you acquire Lot 113?
A. 113?
Q. Yes, the unimproved lot.
A. For resale.
Q. You weren't intending to develop it, put a house on it?
A. Well, that was down the road, you know, resale or develop it, whatever.
At trial, the bank's attorney testified that Nix, in his deposition, "didn't say there was no house on [Lot 113], but he clearly affirmed my assumption that there was no house on it. So did Mrs. Nix. [Counsel for the Nixes] never said anything one way or the other about it."
The trial court found that the bank did not prove the consent judgment was obtained by fraud or ill practices. The court found it "incomprehensible" that the bank would sell the lots without either having them appraised or determining whether the lots were improved.
The bank contends its "diligence" is irrelevant and should not have been considered by the trial court. Focusing solely on the conduct of the Nixes and their "false statements under oath ... in order to obtain valuable rights through the power of the courts," the bank claims the record establishes that the consent judgment was obtained by fraud or ill practices.

FRAUD
A consent judgment is a bilateral contract in which the parties adjust their differences by mutual consent in order to put an end to litigation, or anticipated litigation, with each party balancing the hope of gain against the fear of loss. CC Art. 3071; McLain v. McLain, supra; Braning v. Braning, 449 So.2d 670 (La.App. 4th Cir.1984).
The bank contends its consent to the judgment was vitiated by fraud, which is defined in CC Art. 1953:
Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.
The bank concedes that fraud is not a vice of consent in all circumstances, recognizing that CC Art. 1954 provides:
Fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill.
This exception does not apply when a relation of confidence has reasonably induced a party to rely on the other's assertions or representations.
We cannot agree with the bank's contention that there was a "relation of confidence" between the bank and the Nixes, making it reasonable for the bank to rely on the deposition testimony of the Nixes as confirmation of the bank's assumption that Lot 113 was unimproved. When the depositions were taken, the bank was claiming that the Nixes fraudulently obtained Lot 120, an improved lot, for the price of a vacant lot. In the light of this claim, it was patently unreasonable for the bank to have then relied on the Nixes as the sole source of its information about Lot 113, which the bank sold to the Nixes in the same deed and for the same price as it sold Lot 120.
While we agree that the conclusion that Lot 113 was unimproved can be inferred *1075 from the deposition testimony of the Nixes, we also note that the bank's attorney never questioned them directly to confirm or dispel his assumption that Lot 113 was unimproved. In Mr. Nix's deposition, it was the bank's attorney, and not Nix, who described Lot 113 as "the unimproved lot." In Mrs. Nix's deposition, the bank's attorney did not ask whether Lot 113 was improved, but whether Mrs. Nix knew "that one of the lots was improved and one was not improved."
In any event, the bank clearly could have ascertained the truth about Lot 113 "without difficulty, inconvenience, or special skill," simply by viewing the lot before agreeing to the consent judgment. Although Taylor testified that the lots were not staked and he could not locate Lot 113 without assistance when he went to the subdivision after the consent judgment was signed, he explained that he discovered the error when he had an "ex-builder friend" locate Lot 113 within two weeks after the consent judgment.
The two lots are about 400 feet apart on the same street. Taylor twice visited Lot 120 during the eight months between the March 1987 signing of the cash deed and the November 1987 consent judgment. He saw that Lot 120 was improved on his first visit. He talked to Nix's tenant on Lot 120 on his second visit. Yet Taylor made no attempt to locate or to view Lot 113 until after the consent judgment was signed.
The deposition testimony of the Nixes, even if it is assumed or found to be fraudulent under CC Art. 1953, did not prevent the bank from independently learning that Lot 113 was improved, which the bank easily could have done before agreeing to dismiss its claim as to Lot 113 with prejudice in the consent judgment. Under these circumstances, any fraud by the Nixes is legally insufficient to vitiate the bank's consent to the judgment. CC Art. 1954. See and compare Packwood v. Johnson, 264 So.2d 663 (La.App. 1st Cir.1972) and Silbernagel v. Harrell, 18 La.App. 536, 138 So. 713 (La.App. 2d Cir.1932).

ILL PRACTICES
Even in the absence of actionable fraud, a judgment may be annulled under CCP Art. 2004 if it was obtained by "ill practices." The case law has broadly defined "ill practice" as any improper practice or procedure which operates, even innocently, to deprive a litigant of some legal right. The party seeking annulment must also show that enforcement of the judgment would be unconscionable and inequitable. Kem Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983); Gramm v. Brock, 430 So.2d 199 (La.App. 2d Cir.1983).
The "legal right" of which a litigant must be deprived to have a judgment annulled has been defined as the opportunity to appear and assert a defense. Johnson v. Jones-Journet, 320 So.2d 533 (La.1975); Kem Search, Inc. v. Sheffield, supra. Where, as here, it is the plaintiff rather than the defendant in the original action who seeks to have the judgment annulled, we deem the "legal right" to be the right to appear and assert a claim.
When ill practices are alleged, the court must examine the case "from an equitable viewpoint" to determine whether the party seeking annulment has met his burden of showing "how he was prevented or excused" from asserting his claims or defenses. Gramm v. Brock, supra, 430 So.2d at 201. See also Comment, The Action of Nullity Under Louisiana Code of Civil Procedure Article 2004, 38 La.L.R. 806, 815 (1978):
The determination of a deprivation of legal rights is the first and less difficult of the two inquiries. The question of unconscionability involves assessing the harm done the petitioner and weighing his neglect against this harm .... Hence, excusable neglect will not defeat recovery under article 2004 if one side achieves an advantage in the procurement of a judgment which it would be against good conscience for him to keep. (Our emphasis.)
The bank's "diligence" was properly considered by the trial court in the action to annul, notwithstanding the bank's argument that its diligence would be irrelevant *1076 in an action to rescind for lesion, where the only issue is whether the seller sold the property for less than half of its value. The conduct of the party seeking to annul a judgment must be considered to determine whether enforcement of the judgment would be unconscionable or inequitable. Gramm v. Brock, supra. See also Thompson v. Bland Produce Company, 144 So.2d 769 (La.App. 4th Cir.1962) and Perry v. Rue, 31 La.Ann. 287 (La.1879).
The bank contends the consent judgment deprives the bank of its legal right "to receive a fair, non-lesionary price" for Lot 113. The bank's attorney testified that he elected not to seek rescission of the sale of Lot 113 in the initial lawsuit "since Lot 113 was presumably unimproved and it would dilute my lesion argument. In other words, I would have to show a greater ratio of price to sale if I included Lot 113 in what I sought to rescind."
The bank's attorney admitted that he did not expect to recover damages, even if he proved fraud at trial, and described the settlement agreement, by which Lot 120 was returned to the bank and the Nixes were reimbursed for the purchase price and their expenses for that lot, as "exactly the settlement" he hoped for and sought in the pre-trial conference. He explained that the request by Nix or his attorney to recognize in the consent judgment that the Nixes owned Lot 113 "was logical from my point of view and raised no red flags because the notice of lis pendens had mentioned Lot 113."
The bank does not contend and the record does not show that the Nixes attempted to force or entice the bank to settle its claims instead of going to trial. While the bank's attorney testified that he would have sought a continuance and leave to file amended pleadings to include Lot 113 in the demand for rescission had he known Lot 113 was improved on the day of trial, neither the bank nor its attorney attempted to learn whether Lot 113 was improved until after the consent judgment was signed, even though the bank officer made two trips to the subdivision and discussed the matter with the tenant in the house on Lot 120 before the settlement agreement was reached.
Lot 113 was mentioned in the consent judgment because of the bank's election to include that lot in the notice of lis pendens, even though the bank deliberately excluded Lot 113 from the demand for rescission to facilitate its proof that the sale of Lot 120 was lesionary.
Under these circumstances, the bank's expectation or assumption that the Nixes would inform the bank that Lot 113 was improved cannot be deemed reasonable, and its failure to independently determine the condition of Lot 113 before agreeing to settle its claims as to both lots cannot be deemed to be neglect that is excusable under CCP Art. 2004. Compare factually Kem Search, Inc. v. Sheffield, supra, and Design Associates, Inc. v. Charpentier, 537 So.2d 1233 (La.App. 4th Cir.1989), writ denied.
Annulment of the default judgment in Kem Search was granted because the belief of defendant, an attorney, from his communications with plaintiff's attorney that he would be given an opportunity to file pleadings if his settlement overtures were rejected, was found to be reasonable. Annulment was denied in Design Associates, on a finding that defendants' attorney could not reasonably expect plaintiff's attorney to notify her of a default judgment upon his receipt of pleadings she filed ten days after the date to which the filing deadline had been extended "under penalty of default."

DECREE
The trial court essentially found that the bank's neglect with respect to Lot 113 was inexcusable and that the harm caused by the consent judgment could have been avoided simply by the bank's exercise of reasonable diligence. CC Art. 1954; Gramm v. Brock, supra. On this record, we find no abuse of discretion in the trial court's determination that the consent judgment was not obtained by fraud or ill practices.
*1077 At the bank's cost, the judgment is AFFIRMED.