718 So.2d 609 (1998)
STATE of Louisiana, DEPARTMENT OF SOCIAL SERVICES, OFFICE OF FAMILY SUPPORT IN the INTEREST OF Michael GLASS, Delicia Glass, Felicia Glass and Ira Glass, minor children of Patricia A. Glass, Plaintiff-Appellee.
v.
Nathaniel ROBINSON, Defendant-Appellant.
No. 31025-CA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1998.
*610 Frederick Lewis, Jr., for Defendant-Appellant.
Melissa A. Capella, State of Louisiana, Office of Family Support, Haughton, for Plaintiff-Appellee.
Before MARVIN, C.J., and NORRIS and CARAWAY, JJ.
CARAWAY, Judge.
In this appeal, a default judgment establishing paternity is sought to be annulled by the appellant who now claims to have proof through blood tests that he is not the father. Finding no fraud or ill practice involved in the rendition of the initial default judgment, we affirm the trial court and dismiss appellant's nullity action.

Facts
In 1994, the State of Louisiana filed a petition to determine paternity and establish child support, naming Nathaniel Robinson as the defendant. On April 7, 1995, on application to confirm a default, Patricia Glass testified before a hearing officer that the defendant was the biological father of the four minor children named in the petition. Based on this testimony, the hearing officer found Nathaniel Robinson to be the natural and biological father of the four minor children, including one set of twins, born to Patricia Glass over a twenty-nine month period between February 1980 and July 1982. Subsequently, on April 24, 1995, a default judgment was rendered by the district judge against the defendant confirming the hearing officer's recommendations. The court ordered Robinson to pay child support, costs, and attorney fees.
On September 28, 1995, the defendant filed a petition to annul the judgment for fraud and ill practices under La. C.C.P. art.2004. In his petition to annul the judgment, he admitted that he was served with the original petition in April 1994, but alleged he was unaware, because of his poor reading skills, that he was required to file an answer to the petition. The defendant also admitted he was the father of one of the four minor children, but denied paternity of the other three.
After the initial default judgment but prior to the date of the trial of the nullity action, the mother and the defendant agreed to undergo blood tests. Those tests apparently confirmed that the defendant was not the biological father of three of the minor children.
The nullity action was tried on June 13, 1997. The defendant testified that he had no *611 sexual relations with the mother at the time she became pregnant with the three minor children. He also testified that an acquaintance, Levi Maxey, had claimed to be the father of two of the children. However, the defendant also admitted that the mother told him that he was the father of the twins.
Glass testified that when the matter had come on for trial initially, she believed the defendant to be the father of all four of the minor children. She stated that when she became pregnant with the twins and later the fourth child, she was dating both the defendant and Levi Maxey and had sexual relations with both men. According to the mother, her sexual relationship with the defendant, although not continuous, extended from 1978 until the time he discovered that this support proceeding had been brought. Finally, the mother stated that through the years the defendant had treated all four children equally, and that all four referred to him as "daddy."
At the hearing, the defendant offered the blood test results into evidence. The trial court determined the results were not relevant and denied the admission of them into evidence. The defendant proffered the results to the issue of whether Patricia Glass had falsely testified in the prior proceeding that the defendant was the father of the minor children.

Law
A final judgment obtained by fraud or ill practices may be annulled. La. C.C.P. art 2004. The Louisiana Supreme Court enunciated in Johnson v. Jones-Journet, 320 So.2d 533 (La.1975), the two criteria set forth in our jurisprudence to determine whether a judgment had been obtained by actionable fraud or ill practices. It must be shown that: (1) the circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant seeking relief; and (2) the enforcement of the judgment would have been unconscionable and inequitable. Id., at 537.
Furthermore, a party seeking an annulment must demonstrate how he was prevented or excused from asserting any defenses he may have had, i.e., that he was deprived of the knowledge of the existence of the defense relied on, or the opportunity to present it, by some fraud or ill practice on the part of the other party. Gramm v. Brock, 430 So.2d 199 (La.App. 2d Cir.1983), citing Jones v. Decuers, 320 So.2d 348 (La. App. 4th Cir.1975).
Our courts have also examined each case from an equitable viewpoint to ascertain whether allowing the judgment to stand would be inequitable or unconscionable considering the practice by which the party was able to obtain the judgment. Gramm, supra at 201. Thus the article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable. Kem Search Inc. v. Sheffield, 434 So.2d 1067 (La.1983).
Our jurisprudence is equally clear, however, that an action for nullity is not a substitute for an appeal from a default judgment, Smith v. Cajun Insulation, Inc., 392 So.2d 398 (La.1980), nor is it the solution to legal rights lost through one party's negligence or failure to act. Design Associates, Inc. v. Charpentier, 537 So.2d 1233 (La.App. 4th Cir.1989), writ denied, 540 So.2d 340 (La.1989); Berwick Bay Oil Co. v. Sunrise Shipping, 525 So.2d 239 (La.App. 1st Cir. 1988). "It is also not unconscionable or inequitable to enforce a default judgment even though a defendant had a valid defense but failed to timely assert it." Design Associates, Inc., supra at 1237; Johnson, supra at 537. Furthermore, a default judgment, otherwise legally valid, cannot be set aside and avoided for the purpose of affording a defendant an opportunity to offer a defense solely because that judgment is erroneous and such action would be in furtherance of justice. Gramm, supra at 201.

Discussion
In a similar situation involving an action for paternity and child support, the court *612 in State v. Beauchamp, 473 So.2d 323 (La. App. 1st Cir.1985), writ denied, 477 So.2d 1125 (La.1985), applied the above principles and refused to annul as inequitable a default judgment. Beauchamp, who was adjudicated the father in the default proceeding, raised the issue that the mother was married to another man at the time of the child's birth and that the mother's and the state's knowledge of that fact alone tainted the default proceeding.[1] The court, finding no fraud or ill practice, rejected Beauchamp's claims. We agree that the analysis in the Beauchamp case is likewise applicable in this case.
This nullity action was presented to the trial court with the assertion that Glass committed fraud by falsely testifying at the initial trial that the defendant was the father of the four minor children. While Glass admitted at trial that she had sexual relations with both the defendant and another man during the time period in the early 1980's when the children were born, she asserted that her belief at the time of her prior testimony for the confirmation of the default was that Robinson and not Maxey was the father of the children. Thus, despite Glass' awareness of a biological possibility that Maxey might have been the father, the longheld belief of Glass was that Robinson was the children's father based upon her knowledge of the extent of her relationship with him and his informal acknowledgment of the children as his own. Her testimony to that belief in the confirmation proceeding cannot be attacked as insufficient to support the default judgment and was not found by the trial court in this nullity action to have been given in bad faith, as a fraud on the court and against Robinson. The fact finding of the trial court in this instance, which weighed the testimony of both Glass and Robinson, will not be overruled for manifest error under these circumstances.
Additionally, we hold that Robinson's failure to have acted upon the sheriff's service upon him of the citation and the original suit petition raises no equitable basis for nullifying the default judgment. The formality of that personal service is a significant notice in and of itself, irrespective of a person's ability to read, so that the defendant at a minimum must have the citation and petition read to him and respond to the suit.
Finally, based upon our ruling above regarding Glass' testimony, the failure of the trial court to have allowed the result of the blood test into evidence did not affect the trial court's ability to make a judgment regarding Glass' belief of Robinson's paternity prior to the time of the blood test. In fact, Glass candidly admitted in her testimony in this nullity action that because of the blood test taken after her initial testimony, "the paternity test proved different" and her belief in Robinson's paternity has now been scientifically contested. That admission along with her admission regarding her involvement with Maxey was therefore before the trial court. Nevertheless, for the reasons stated above, we cannot say that the trial court was clearly wrong in his view that Glass' prior testimony was in good faith.

Conclusion
In the instant case, the mother's testimony was not so internally inconsistent or implausible on its face that a reasonable factfinder would not credit her story. After failing to respond to the suit and the entry of the default judgment, the defendant may not retry the case to offer a substantial defense. The trial judge correctly determined that the default judgment should not be annulled for fraud and ill practices. The judgment is affirmed at appellant's cost.
AFFIRMED.
MARVIN, C.J., dissents with written reasons.
*613 MARVIN, Chief Judge, dissenting.
I respectfully dissent because I believe the record in this appeal warrants our reversal and rendition of a judgment in favor of the father amending the judgment to decree him to be the parent of only one of the four children of his paramour.
This father-plaintiff alleged and factually supported his cause of action under La. C.C.P. art.2004 to annul the April 1995 default judgment. The evidence supporting the default judgment was heard by a hearing officer who recommended the default judgment to the district court judge who signed it. We have no transcript of the proceedings to confirm the April 1995 default judgment.
The father filed the nullity action in September 1995 when the State began enforcing the support order in the April default judgment against the father. Trial of the nullity action by the district judge was delayed until 1997[!] because it was inadvertently referred to, and was heard and denied, by the hearing officer.
Because of the father's objection or exception to the hearing officer's recommended denial of his demands in the nullity action, the matter was then referred to the district court for trial. The district judge who signed the April 1995 default judgment held the trial in 1997 to annul that judgment. When the nullity action was called for trial and after the father-plaintiff announced ready for trial, the court suggested that the State's attorney should seek a continuance to get her witnesses in court. This suggestion, of course, was followed.
The record shows that the mother's mere "belief" in 1995 served as the basis for the State's default judgment and that because the father is relatively illiterate he did not realize the significance of the State's demands premised on four children in the paternity-support action. In short, the father knew and acknowledged he was the parent of one of his paramour's children, whom he willingly had supported. When the State began enforcement of the support order in the default judgment for a greater amount for the four children than for the one, the father, realizing this, then consulted an attorney.
Thereafter, and before the eventual hearing of the father's action for nullity, blood tests proved the father's understanding that he was the parent of only the one child whose paternity he had long admitted. The blood tests made after September 1995 likewise excluded the plaintiff-father as being the parent of the other three children!
The district court refused to admit [and in my view, to consider,] the blood tests at the trial of the nullity action on the grounds that the tests were not made until after the plaintiff-father filed the nullity action. The tests are in the appellate record as a proffer.
The blood tests were clearly admissible and should have been considered. The mother's testimony in the annulment action that she "believed" in 1995 that Robinson was the father does not avail the State, and, moreover, supports the appellant-father's contention, that while living with the mother, he supported all of the children of his paramour, but was the father of only the one child. The blood tests confirm this.
The annulment action, of course, does not substitute for an appeal, but is purposely provided in the law to remedy such a situation as this record presents. The majority recognizes that the Art.2004 provisions are not limited to cases of actual fraud or wrongdoing, but are sufficiently broad enough to remedy all situations that may "innocently" deprive a litigant of some legal right by enforcement of a judgment that would be unconscionable and inequitable, citing authority.
Beauchamp, cited in support of affirming the judgment in this appeal, relied on express law [La. R.S. 46:236.1(F)] to support its result. There, the enforcement of a default judgment in a paternity-support action by the State was not considered inequitable or unconscionable simply because another man was statutorily or legally presumed to have been the father of the child in question. Each case, however, as the majority opinion recognizes, must stand on its own peculiar facts. Here, this fatherplaintiff in the nullity action does not rely *614 on a legal presumption to annul, but presents the peculiar facts in his case that are not akin to the facts in Beauchamp. The father-appellant here, unlike Beauchamp, is being required to support three children whom he can affirmatively prove he did not father.
Even though this default judgment may have been "innocently" obtained by the State without specific ill-practice or fraud on the part of the State, the enforcement of its support provisions by the State for three of the four children in question, that are absolutely not the children of this "father," in my opinion, should be deemed inequitable and unconscionable.
In the great cross-section of cases, express law applicable to a given situation does not allow a court, sworn to uphold the law, to resort to achieving equity or accomplishing "justice." One of the rare exceptions of long standing, in the wisdom of the legislature, is the case presenting an action to annul a judgment as provided in La. C.C.P. art.2004. This case is a proper case under that article.
I would amend the judgment appealed to grant the relief that I suggest is contemplated by Art.2004 to this plaintiff-appellant.
NOTES
[1] Regardless of any legal presumption of paternity regarding the other man, the court in Beauchamp did not consider the default judgment as inequitable or unconscionable. The court allowed the default adjudication of paternity to stand despite the cloud surrounding the mother's relationship with two men. The court also noted in a footnote that under La. R.S. 46:236.1(F), the state is authorized in these paternity proceedings to "take direct civil action, including actions to establish filiation against an alleged biological parent notwithstanding the existence of a legal presumption that another person is the parent of the child." State v. Beauchamp, supra at 327.