# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-154

TRACY ALEXANDER

VERSUS

**STATE OF LOUISIANA, DEPARTMENT OF**
**CHILDREN & FAMILY SERVICES**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2016-4882
HONORABLE W. MITCHELL REDD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## MARC T. AMY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and
Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**Nicholas Pizzolatto, Jr.**
**Department of Children & Family Services**
**1919 Kirkman Street**
**Lake Charles, LA   70601**
**(337) 491-2470**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana, Department of**
     **Children & Family Services**

**Richard D. Moreno**
**Richard D. Moreno, LLC**
**125 W. School Street**
**Lake Charles, LA   70601**
**(337) 433-9535**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Tracy Alexander**

**AMY, Judge.**

After proceedings related to the State's filing of a "Petition for Termination of Parental Rights and Certification for Adoption" concerning two minor children, the trial court rendered judgment terminating the mother's parental rights. The mother ultimately filed a petition for nullity and corresponding motion for summary judgment. However, the trial court denied her motion for summary judgment and dismissed her petition for nullity, and the mother now appeals that judgment. For the following reasons, we affirm.

## Factual and Procedural Background

On July 1, 2015, the State, through the Louisiana Department of Children and Family Services (DCFS), filed a "Petition for Termination of Parental Rights and Certification for Adoption" concerning two of the minor children of Tracy Alexander. A bench trial on the merits of the petition was held on December 1, 2015. The children's mother, Ms. Alexander, was not present at the trial, and neither Ms. Alexander's counsel, Richard P. Moreno, nor counsel for DCFS had an explanation for her absence. Mr. Moreno explained to the trial court that he had recently "been unable to contact [Ms. Alexander], despite repeated efforts" but that he had "her last current address" and had "notified her twice by mail and once in conversation" about the trial date. Citing Ms. Alexander's absence, Mr. Moreno orally moved for a continuance, which the trial court denied, and the matter proceeded in her absence. The trial court ultimately granted DCFS's petition, thus terminating Ms. Alexander's parental rights over the minor children.

On December 15, 2015, Ms. Alexander filed a motion for new trial based on her absence at the trial. At a hearing on the motion, Lazetter West, the DCFS caseworker handling Ms. Alexander's case, testified that on November 5, 2015, she

received a letter from Mr. Moreno requesting that Ms. West arrange transportation for Ms. Alexander to attend the December 1, 2015 trial. Ms. West explained that, after receiving the letter, she "tried to call Ms. Tracy on the number, but for some reason, [she] couldn't get through" because the "number kept being busy or something." She stated that she further tried to reach Ms. Alexander by calling the residence where Ms. Alexander had reported to be living and the place where Ms. Alexander had reported to be working but was informed that Ms. Alexander no longer lived nor worked there, respectively, and had not provided forwarding information. Ms. West confirmed that she did not alert Mr. Moreno of her inability to get in touch with Ms. Alexander to schedule transportation prior to trial.

Ms. Alexander also testified at the hearing. When asked whether she was aware of the trial date beforehand and whether she was aware that she needed to attend the trial, Ms. Alexander answered: "I wasn't aware I needed to be here, but I was aware of it." Regarding her efforts to attend the trial, she indicated that she called Ms. West "two or three days before the court date" and left voicemail messages asking Ms. West to return her calls. Ms. Alexander stated that she did not receive return phone calls from Ms. West and had no other means to attend the trial. Ms. Alexander also stated that she called her attorney in the days leading up to trial, and the following colloquy occurred:

Q.   Did you ever call your lawyer before the trial?

A.   Yes.

Q.   After you could not get hold of Ms. West?

A.   I called him, and he's the one who told me to call Ms. West to file for a ride.

Q.   Okay. And then you called her and couldn't get her?

A.    Yes.

Q.    That was the 25th.  That was six days prior to trial?

A.    Yes.

Q.    Yeah, six days prior to trial.  Now, I do know that Thanksgiving, I believe, was the 26th.

A.    Uh-huh (yes).

Q.    Did you try on the 27th?  Did you try on the 30th?

A.    No, I didn't try after those days.  I tried - -

Q.    You tried calling your lawyer on those days.

A.    Yeah, I tried calling my lawyer on those days.  And I called, and she said she was going to give him a message to call me back, and he didn't call me back yet.

Q.    Okay.  So your lawyer didn't call you back?

A.    Yes.

At the hearing on the motion for new trial, Ms. West also testified that although her telephone number had changed around October 19, 2015 when she received a promotion, she recorded a voicemail greeting that notified callers that her telephone number had changed and provided her new telephone number.[1]  Regarding the change to Ms. West's telephone number, Ms. Alexander stated that, prior to the trial, she had called and left voicemail messages on the old telephone number and did not learn of Ms. West's new telephone number until after the trial.  She testified that the voicemail greeting on the old telephone number provided Ms. West's name and stated that "she couldn't be reached at the time.  Please leave a name and a message, and she'll get back to" the caller.  Ms. West testified that she had checked her old voicemail every

_____

[1] A recording of the voicemail greeting associated with Ms. West's old telephone number was played during the hearing and transcribed as follows:  "AUDIO RECORDING:  'You've reached the desk of Lazetter West with the Department of Children and Family Services.  I am letting you know that my number has been changed, and the new number is [xxx-xxx-xxxx].  Again, my number has been changed to [xxx-xxx-xxxx].  Thank you.  Please record after the beep.'"

day prior to the trial and had not received any messages from Ms. Alexander. She stated that she "never heard from Ms. Tracy" and did not receive any voicemail messages from Ms. Alexander until after the trial on approximately December 19, 2015.

Following the hearing, the trial court denied Ms. Alexander's motion for new trial. In oral reasons for ruling, the trial court stated:

> It is clear that the DCFS worker did not call the lawyer for Ms. Alexander to tell him that she could not locate Ms. Alexander to pick her up from wherever she was to bring her to trial. However, the worker did attempt, and I'm satisfied that the worker did attempt to contact Ms. Alexander and was unable to do so and actually contacted the third person that was involved in the matter, who also did not know where Ms. Alexander was.

> I am not going to expand the duties of the DCFS workers to call the lawyers to tell them that they can't get in touch with the clients to pick them up to bring them to court. I think that goes above and beyond what should be expected of them.

> Also, I find that the testimony of the DCFS worker, Ms. West, was more detailed and credible then [sic] that of Ms. Alexander when it comes to the issue of who was called when and what messages were left, et cetera.

Ms. Alexander appealed, and a panel of this court affirmed the trial court's denial of the motion for new trial, as well as the termination of parental rights. Ms. Alexander then filed a writ application, which the supreme court denied. *See State in the Interest of G.M.A.*, 16-405 (La.App. 3 Cir. 9/28/16), 201 So.3d 1014, *writ denied*, 16-1945 (La. 11/18/16), 210 So.2d 290.

Thereafter, on December 1, 2016, Ms. Alexander filed a "Verified Petition for Nullity of Judgment for Fraud and Ill Practices" in which she asserted:

> The aforementioned failures of DCFS to arrange for transportation for TRACY to the December 1 Termination Trial, or to inform TRACY's counsel of that failure before December 1, or to inform the trial court of that failure at the December 1, 2015 Termination Trial constitute fraud

4

and ill practices within the meaning of Article 2004B of the Louisiana Code of Civil Procedure.

In response, DCFS filed an exception of res judicata and a motion for summary judgment, asserting that the issues raised by Ms. Alexander's petition had been considered in this court's September 28, 2016 judgment and that "there does not exist a genuine issue of material fact that has not been determined by the prior tribunals[.]" Thereafter, Ms. Alexander filed a motion for summary judgement concerning her petition for nullity. The trial court ultimately denied Ms. Alexander's motion for summary judgment, dismissed her petition for nullity, and granted DCFS's motion for summary judgment, stating, in part:

> In reviewing the Joint Stipulations of Fact, it is clear that ALEXANDER'S attorney had requested transportation for ALEXANDER to the termination hearing, and that in response, the DCFS case worker assigned to the case attempted prior to the trial to contact ALEXANDER to arrange transportation to the termination trial, but was unable to contact ALEXANDER. The Joint Stipulation further provides that ALEXANDER'S own counsel of record tried to contact her for some 3 weeks or so prior to the trial, and was likewise unable to do so.
>
> The Court finds that the DCFS attempts to contact ALEXANDER to arrange for transportation were sufficient. The Court further finds that ALEXANDER was aware of the trial date, and that it was her duty to ensure that she attended such hearing if she desired to do so. There was no ill practice or fraud perpetuated by DCFS in this matter.

Ms. Alexander appeals that judgment,[2] asserting the following assignments of error:

> I. The trial court erred by granting the State-DCFS'[s] Motion for Summary Judgment and dismissing the Petition for Nullity of Judgment for Fraud and Ill Practices filed by TRACY ALEXANDER.

---

[2] Ms. Alexander's motion for appeal, as well as the corresponding order of appeal, contained the captions and the trial court docket numbers of both the termination of parental rights proceeding and the petition for nullity. The appellate record of each was lodged with this court. The latter is addressed herein. For disposition of the companion matter, see *State in the Interest of G.M.A. & K.K.A.*, 18-153 (La.App. 3 Cir. _/_/18), _ So.3d _.

5

II. The trial court erred by denying the Motion for Summary Judgment filed by TRACY ALEXANDER on her Petition for Nullity of Judgment for Fraud and Ill Practices.

**Discussion**

In reviewing a trial court's grant or denial of summary judgment, an appellate court reviews the matter *de novo* using the same criteria that governed the trial court's consideration. *Carriere v. State*, 97-1305 (La.App. 3 Cir. 3/6/98), 708 So.2d 822, *writ denied*, 98-0958 (La. 5/29/98), 720 So.2d 335. According to La.Code Civ.P. art. 966 (A)(3), "a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." As the second circuit has explained, "[b]ecause the applicable substantive law determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case." *Payne v. Glass*, 41,232, p. 5 (La.App. 2 Cir. 8/23/06), 939 So.2d 526, 529 (citing *Lemann v. Essen Lane Daiquiris, Inc.*, 05-1095 (La. 3/10/06), 923 So.2d 627).

Here, the parties' motions for summary judgment concerned Ms. Alexander's petition for nullity. Accordingly, we turn to consideration of La.Code Civ.P. art. 2004(A), which provides that "[a] final judgment obtained by fraud or ill practices may be annulled." In discussing La.Code Civ.P. art. 2004, the supreme court has explained:

> In *Johnson v. Jones–Journet*, 320 So.2d 533 (La.1975), this Court reviewed the historical development of C.C.P. art. 2004 and noted that the jurisprudence under Art. 607 of the Code of Practice (the source of present C.C.P. art. 2004) established the following criteria for an action in nullity: (1) that the circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant seeking relief, and (2) that the enforcement of the judgment would have been unconscionable and inequitable. Since that time, this Court has accepted those two requirements as the necessary elements in establishing a nullity

6

action under Art.2004. *See Gladstone v. American Auto. Ass'n, Inc.*, 419 So.2d 1219 (La.1982); *Kem Search,* [*Inc. v. Sheffield*, 434 So.2d 1067 (La.1983)]; *Belle Pass Terminal, Inc. v. Jolin, Inc.*, 01–0149 (La.10/16/01), 800 So.2d 762.

However, those cases also further defined the types of conduct required to establish those two elements depending on the type of fraud or ill practice alleged. This Court has held that "the article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations where a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable." *Power Marketing* [*Direct, Inc. v. Foster*, 05-2023 (La. 9/6/06), 938 So.2d 662,] 671; *Kem Search, supra* at 1070 (citing *Chauvin v. Nelkin Ins. Agency, Inc.*, 345 So.2d 132 (La.App. 1 Cir.), *writ denied*, 347 So.2d 256 (La.1977)); *see also, Schoen v. Burns*, 321 So.2d 908 (La.App. 1 Cir.1975); *St. Mary v. St. Mary*, 175 So.2d 893 (La.App. 3 Cir.1965); *Tapp v. Guaranty Finance Co.*, 158 So.2d 228 (La.App. 1 Cir.1963), *writ denied*, 245 La. 640, 160 So.2d 228 (1964).

The Court in *Kem Search* further defined the required "deprivation of legal rights" as "[c]onduct which prevents an opposing party from having an opportunity to appear or to assert a defense." *Id.* This definition was further expanded in *Belle Pass*, which held that "a right to a fair and impartial trial is a legal right entitled to all participants in a legal proceeding." 800 So.2d at 767.

*Wright v. La. Power & Light*, 06-1181, pp. 12-13 (La. 3/9/07), 951 So.2d 1058, 1067

(footnotes omitted).

In her petition for nullity, Ms. Alexander argued that the failure of DCFS to arrange for her transportation to the trial constituted fraud and ill practices, which deprived her of her right to testify. In interpreting La.Code Civ.P. art. 2004, the second circuit has stated:

Our jurisprudence is equally clear, however, that an action for nullity is not . . . the solution to legal rights lost through one party's negligence or failure to act. *Design Associates, Inc. v. Charpentier*, 537 So.2d 1233 (La.App. 4th Cir.1989), *writ denied*, 540 So.2d 340 (La.1989); *Berwick Bay Oil Co. v. Sunrise Shipping*, 525 So.2d 239 (La.App. 1st Cir.1988).

7

*State, Dep't of Soc. Servs., Office of Family Support in Interest of Glass v. Robinson*, 31,025, p. 3 (La.App. 2 Cir. 9/23/98), 718 So.2d 609, 611. Additionally, the first circuit has stated that "[w]hen a party fails to act on its own behalf and suffers a loss as a result, an action for nullity is not the proper remedy." *Mike v. Bob's Painting*, 07-2190, p. 8 (La.App. 1 Cir. 9/26/08), 995 So.2d 43, 49-50 (citing *McKinney Saw & Cycle v. Barris*, 626 So.2d 786, 789 (La.App. 2 Cir. 1993)).

For example, in *State Through Dep't of Soc. Servs. v. Jones*, 94-2605 (La.App. 1 Cir. 10/6/95), 671 So.2d 404, Derek Jones was served with a copy of a petition to establish paternity but did not answer the petition, and, after a confirmation hearing on a preliminary default, the trial court rendered judgment finding that the minor child was the natural child of Mr. Jones. Subsequently, Mr. Jones filed a petition to annul the judgment of paternity, asserting that he had been told by counsel for the Department of Social Services ("Department") that blood tests would be performed. *Id.* Counsel for the Department testified that, when a defendant in a paternity case wishes to take a blood test, the typical procedure is to file a joint motion and order for paternity testing, which was not done in the case. *Id.* In addition to finding that Mr. Jones filed his petition for nullity more than one year after the judgment was rendered contrary to La.Code Civ.P. art. 2004(B) and affirming the grant of the Department's exception of prescription, the first circuit affirmed the dismissal of Mr. Jones' petition for nullity, stating: "Moreover, while it may be argued that Jones may have believed that blood tests would be taken, he was put on notice that such was not the case when he did not receive any motion or order to appear for such blood tests subsequent to his conversation with" counsel for the Department. *Id.* at 408.

Here, Ms. Alexander asserted that DCFS committed fraud and ill practices by failing to arrange transportation. However, based on the testimony adduced at the

hearing on the motion for new trial, the inability to arrange for transportation appears to stem, at least in part, from Ms. Alexander's failure to act on her own behalf in that she had not provided DCFS with current contact information. *See Mike*, 995 So.2d 43. Based on Ms. West's testimony, she did not have an accurate phone number, home address, or workplace location to be able to contact Ms. Alexander. Moreover, while it may be argued that Ms. Alexander believed that transportation would be provided, Ms. Alexander was put on notice that transportation arrangements had not been made when she neither spoke with anyone from DCFS nor received information about any such arrangements. *See Jones*, 671 So.2d 404. Though Ms. Alexander testified that she called her attorney, left messages for him, and did not receive a return phone call, her testimony fails to indicate that her messages notified her attorney of her inability to speak with Ms. West. Ms. Alexander testified that she was aware of the trial date. However, there is no indication that, as the trial date approached, Ms. Alexander notified anyone, including her attorney, that she had been unable to arrange transportation with DCFS. Thus, the trial court did not have that information available to it on the day of trial. As discussed above, a petition for nullity is not "the solution to legal rights lost through one party's negligence or failure to act." *Robinson*, 718 So.2d at 611.

In her petition for nullity, Ms. Alexander also stated that DCFS's failure to disclose to either her counsel or the trial court the inability to arrange transportation constitutes fraud and ill practices that deprived her of her right to testify. The supreme court has explained:

> Regarding nullity actions such as this one where a party alleges the other party withheld information at trial, *Gladstone* [*v. American Auto. Ass'n, Inc.*, 419 So.2d 1219, 1223 (La.1982)] held that "[d]iscovery of evidence which could have been presented at the original trial usually

cannot serve as the basis for an action for nullity." [] As the Court explained:

> ... the mere failure to disclose information at a hearing does not necessarily constitute fraud or ill practice. That determination depends on the nature of the information and the circumstances surrounding the hearing. A party is not obliged to produce evidence favorable to the opponent or to present the opponent's version of the case, and the failure to disclose all information on the issue is not ill practice unless concealment or deceit is involved. Moreover, a party may present only his version of the occurrence, as long as he does not use false or perjured testimony or forged documents.

*Id.* The Court found that the plaintiff "had every opportunity to support her defenses in the hearing before the appeals referee" and that she "simply did not exercise sufficient diligence in marshaling and presenting evidence of her version of the facts leading up to her termination." *Id.* In reaching this holding, the Court in *Gladstone* relied on a nullity case dating back to 1932, which held that "*an unsuccessful litigant may not attack a judgment as fraudulent because the other party failed to disclose certain facts within his knowledge, when the plaintiff with reasonable diligence could have ascertained those facts himself.*" *Id.* at p. 1223, n. 6 (citing *First Nat'l Life Ins. Co. v. Bell*, 174 La. 692, 141 So. 379 (1932) (emphasis added)).

*Wright*, 951 So.2d at 1068. *See also Andrus v. Chrysler Financial Corp.*, 99-105, p. 9 (La.App. 3 Cir. 6/2/99), 741 So.2d 780, 785 (wherein a panel of this court noted "that the fact that a plaintiff presents only its own version of the controversy and fails to disclose a contrary position or view held by the defendant does not constitute fraud or ill practices, provided that the plaintiff does not present its contentions on false, fabricated, or perjured testimony"), *writ denied*, 99-1968 (La. 10/15/99), 748 So.2d 1150.

Turning to the facts of this case, Ms. Alexander could have, with reasonable diligence, ascertained both that she would not be present at the trial and the reasons that she would not be present. Namely, she testified that she had no independent means of transportation and had not spoken with Ms. West or anyone else at DCFS

prior to the trial to arrange for transportation. Thus, because her absence and the reasons for said absence are information that Ms. Alexander could have ascertained herself, we find that there was no fraud or ill practice relating to DCFS's failure to disclose its unsuccessful attempts to arrange transportation with Ms. Alexander. *See Wright*, 951 So.2d 1058.

Above we have determined that DCFS's inability to arrange for transportation and failure to disclose this inability do not constitute fraud or ill practices pursuant to La.Code Civ.P. art. 2004. We thus find that Ms. Alexander did not prove that she was entitled to a judgment of nullity pursuant to La.Code Civ.P. art. 2004. Accordingly, we conclude that the trial court properly dismissed Ms. Alexander's petition for nullity; denied Ms. Alexander's motion for summary judgment; and granted DCFS's motion for summary judgment.

### DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against Tracy Alexander.

**AFFIRMED.**

11