STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-405

STATE IN THE INTEREST OF G.M.A. & K.K.A.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 27795
HONORABLE W. MITCHELL REDD, DISTRICT JUDGE

**********

**PHYLLIS M. KEATY**
**JUDGE**

**********

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and Phyllis M. Keaty, Judges.

AFFIRMED.

Richard D. Moreno
Richard D. Moreno, LLC
Post Office Box 149
Lake Charles, Louisiana 70602-0149
(337) 656-8654
Counsel for Appellant:
    T.A. (mother)

**Nick Pizzolatto, Jr.**
**Attorney Supervisor**
**Louisiana Department of Children & Family Services**
**1919 Kirkman Street**
**Lake Charles, Louisiana  70601**
**(337) 491-2066**
**Counsel for Other Appellee:**
      **Louisiana Department of Children & Family Services**

**Bethany Blackson**
**Calcasieu Parish District Attorney's Office**
**901 Lakeshore Drive**
**Lake Charles, Louisiana  70601**
**(337) 437-3400**
**Counsel for Other Appellee:**
      **State of Louisiana**

**Mike K. Stratton**
**J. Wade Smith**
**Public Defender's Office**
**1020 Ryan Street**
**Lake Charles, Louisiana  70601**
**(337) 436-1718**
**Counsel for Other Appellee:**
      **K.D. (father)**

**Ann McSpadden**
**Attorney at Law**
**One Lakeshore Drive, Suite 1585**
**Lake Charles, Louisiana  70629**
**(337) 491-2461**
**Counsel for Other Appellee:**
      **G.M.A. (child)**
      **K.K.A. (child)**

**KEATY, Judge.**

T.A.,[1] the mother of two minor children, G.M.A. and K.K.A.,[2] appeals a judgment permanently terminating her parental rights and certifying the children available for adoption as well as a judgment denying her motion for new trial. For the following reasons, we affirm both judgments.

## FACTS AND PROCEDURAL HISTORY

G.M.A., who was born on January 7, 2007, and K.K.A., who was born on August 5, 2012, were adjudicated in need of care on May 19, 2014.[3] On July 1, 2015, the Louisiana Department of Children and Family Services (the State or the DCFS) filed a Petition for Termination of Parental Rights and Certification for Adoption (the Termination Petition) regarding G.M.A. and K.K.A.

By way of background, the Termination Petition recited that the DCFS had previously sought the termination of T.A.'s parental rights to G.M.A. and two of her siblings, not including K.K.A., who had come into the State's custody in November of 2010 after a validated complaint was filed against their parents, T.A. and G.Y., for physical abuse and neglect. K.K.A. was born in August of 2012, while T.A.'s three older children were in the State's custody. In April of 2013, the DCFS filed a neglect/inadequate food complaint against T.A. concerning K.K.A. Nevertheless, after a September 27, 2013 hearing, T.A. was granted custody of her three older children with the DCFS's supervision. During that period of

---

[1] Pursuant to Uniform Rules—Courts of Appeal, Rules 5–1 and 5–2, the initials of the parties will be used to protect and maintain the privacy of the minor children involved in this proceeding.

[2] T.A. is the mother of both G.M.A. and K.K.A. The parental rights of K.D., the father of K.K.A., were also terminated in the judgment at issue in this appeal, but he has not appealed that judgment. The parental rights of G.Y., the father of G.M.A., were previously terminated by judgment dated July 17, 2014; that judgment is not at issue in this appeal.

[3] The child in need of care adjudications were rendered in Docket Numbers 23710 and 26374, which records are contained as exhibits to this appeal.

supervision, additional complaints were validated against T.A. concerning all four of her children. With regard to G.M.A. and K.K.A., those complaints were for neglect, while two complaints concerning one of T.A.'s other children were for physical abuse. All four of T.A.'s children were placed into the custody of the DCFS in April of 2014. When G.M.A. and K.K.A. were adjudicated in need of care on May 19, 2014, the case plan goal for K.K.A. was unification, while the goal for G.M.A. and her two other siblings was adoption. After a termination trial was held in June of 2014 regarding K.K.A.'s older siblings, judgment was rendered on July 17, 2014, wherein the trial court decreed that it was not in G.M.A.'s best interest that T.A.'s parental rights to her be terminated at that time.[4] When the instant Termination Petition was filed on July 1, 2015, G.M.A. and K.K.A. had been in the State's custody for over one year, with G.M.A. having been in custody for forty-eight of the previous fifty-five months.

T.A. and her counsel of record appeared before the trial court regarding this matter on September 4, 2015, at which time T.A. was served with a copy of the Termination Petition in open court, and trial was reset for October 22, 2015. Court minutes dated October 22, 2015, indicate that the matter was refixed for trial on December 1, 2015, and the clerk was ordered to notify T.A.'s counsel of record, who was not present, of the new trial date. Before the start of the December 1, 2015 trial on the merits, T.A.'s counsel informed the trial court that he had been unable to contact her, despite repeated efforts, but that he had notified her of the trial date several times by letter and once in a conversation. Thereafter, counsel for T.A. made an oral motion to continue the trial based upon her absence. The DCFS

---

[4] T.A.'s parental rights to her two other minor children were terminated in the July 17, 2014 judgment, and those children were certified as free and eligible for adoption.

objected to the matter being continued. The trial court denied the motion to continue on the basis that T.A. had knowledge of the trial and that the minors needed the proceeding to move forward.

Upon the start of the trial on the merits, the DCFS offered, and the trial court accepted into evidence, the records in which G.M.A. and K.K.A. were adjudicated children in need of care. The only witness to testify at the trial was Ms. Lazetter West, the foster care worker for G.M.A. and K.K.A. and their parents. At the close of the evidence, the trial court rendered oral reasons finding that the State had met its burden of proof and terminated T.A.'s parental rights to G.M.A. and K.K.A. By written judgment dated December 4, 2015, the trial court granted the Termination Petition and decreed that T.A.'s parental rights to G.M.A. and K.K.A. were "immediately permanently and irrevocably dissolved" and specifically finding that such action was in the best interest of G.M.A. and K.K.A. The trial court ordered G.M.A. and K.K.A. to remain in the custody of the DCFS and certified them free and eligible for adoption. T.A. timely filed a Motion for New Trial, which was denied in open court after a January 22, 2016 hearing and reduced to written judgment on January 29, 2016. T.A. appealed and is now before this court asserting the following assignments of error:[5]

> I. The Trial Court erred by denying a Motion for Continuance when defendant [T.A.] (the natural mother of G.M.A & K.K.A.) was unable to attend the trial for Termination of her Parental Rights because the State (DCFS) failed to provide transportation to her for the trial and failed to notify her counsel that the State could not contact her to provide such transportation, despite [T.A.]'s counsel having made the request over a week before trial.
>
> II. The Trial Court erred by rendering a judgment of Termination of the Parental Rights of [T.A.] in her absence when that absence

---

[5] For purposes of our analysis, we have renumbered T.A.'s third and fourth assignments of error.

resulted by a breach of a promise by the State to provide transportation to [T.A.] for the hearing.

III. The Trial Court erred by rendering a judgment of Termination of the Parental Rights of [T.A.] on the record under the clear and convincing evidentiary standard.

IV. The Trial Court erred by denying the Motion for New Trial filed by [T.A.].

## DISCUSSION

*Denial of the Motion to Continue*

In her appellate brief, T.A. states that she "was prevented from appearing and testifying at the termination trial because of the failure of the State (DCFS) to provide her transportation to the trial." T.A. contends that because the DCFS failed to give her counsel notice of that failure either prior to or on the day of trial, he was denied the opportunity to facilitate T.A.'s transportation to the trial.

"The decision whether to grant or to deny a motion to continue rests within the trial court's sound discretion, and a reviewing court will not disturb such a decision absent a clear abuse of discretion." *State in Interest of J.T.*, 11-1646, p. 8 (La.App. 4 Cir. 5/16/12), 94 So.3d 847, 853.

A perusal of the record reveals that it was not until T.A. filed her motion for new trial that it was disclosed that her counsel had written to Ms. West informing her that T.A. had no means of transportation and requesting that Ms. West furnish T.A. transportation to the December 1, 2015 trial. Thus, when counsel for T.A. made the oral motion to continue the trial, the only information provided to the trial court was that T.A. had received notice of the December 1, 2015 trial date and that she was not present in court on that day. Given those circumstances, we find no abuse of discretion in the trial court's denial of the motion to continue. T.A.'s first assignment of error has no merit.

4

*Rendition of Judgment Terminating Parental Rights in Parent's Absence*

T.A. contends that the trial court erred in terminating her parental rights in her absence because the State breached its promise to provide her with transportation to trial.

Louisiana Children's Code Article 1033, titled "Effect of nonappearance," provides as follows:

> If it appears from the record that the parent has been served in accordance with Article 1021 or 1022[6] or has been located and notified in accordance with Article 1020 and the parent fails to appear at the hearing, then the hearing shall be held in the parent's absence and the petitioner shall be required to establish prima facie proof of the allegations contained in the petition.

Louisiana Children's Code Article 1020 requires that when parental rights are sought to be terminated, the parent "shall" be served with specific written notice advising them of the right to counsel and the effect of a termination judgment. Louisiana Children's Code Article 1021 provides that when the parental rights of a Louisiana resident are sought to be terminated, "service of citation shall be made either personally or by domiciliary service not less than five days prior to commencement of the hearing on the matter."

As previously mentioned, the court minutes show that T.A. was served with a copy of the Termination Petition in open court on September 4, 2015, and that the trial which had been set for that date was reset for October 22, 2015. The record indicates that T.A. received notice of the October 22, 2015 and the December 1, 2015 trial dates, both of which were set more than five days after she was served with citation. In addition, the Termination Petition in the record contains the notice specified in La.Ch.Code art. 1020. Accordingly, we conclude

---

[6] Louisiana Children's Code Article 1022 relates to out-of-state defendants and is not applicable to this litigation.

5

that because the requirements of La.Ch.Code art. 1033 were met, the trial court committed no error in proceeding with the trial to terminate the parental rights of T.A. with regard to her children G.M.A. and K.K.A.

As we discussed in regard to T.A.'s first assigned error, when the trial in this matter commenced, the trial court was unaware that T.A.'s counsel had sought the DCFS's assistance in providing T.A. with transportation to the termination trial. Thus, we will not take that information into consideration in reviewing the propriety of the trial court's decision to proceed with the termination trial. Because, as we find in our discussion of T.A.'s third assigned error, the State provided prima facie proof of the allegations made in the Termination Petition, the trial court did not err in terminating T.A.'s parental rights in her absence. Thus, T.A.'s second assignment of error lacks merit.

### Did the DCFS Meet its Burden of Proof at the Termination Trial?

T.A. argues that the trial court erred in terminating her parental rights to G.M.A. and K.K.A. because the DCFS did not prove that her rights should be terminated by clear and convincing evidence. The DCFS admits that La.Ch.Code art. 1035(A) provides that "[t]he petitioner bears the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence." It contends, however, that because T.A. was not present at the termination hearing, La.Ch.Code art. 1033 dictates that it only had to present prima facie proof that T.A.'s parental rights should be terminated. We agree that the Children's Code clearly directs that the DCFS's burden of proof at a termination hearing is lessened when a parent is absent and the State proves that it complied with La.Ch.Code art. 1033. Because we have found that the DCFS proved such compliance, we must now determine whether the trial court erred in finding that

6

the DCFS presented prima facie evidence[7] that T.A.'s parental rights should be terminated.

> [A]n appellate court will review a trial court's findings on whether or not parental rights should be terminated under the manifest error standard of review. *State in Interest of J.K.G.,* 11-908 (La.App. 3 Cir. 1/11/12), 118 So.3d 10. Pursuant to this standard, an appellate court may not reverse a trial court's factual finding unless the record demonstrates both that a reasonable factual basis does not exist for the finding and that the finding is clearly wrong. *Id.*

*State in Interest of C.E.*, 15-555, 15-556, p. 4 (La.App. 3 Cir. 10/7/15) 176 So.3d 755, 758.

> In a case involving the involuntary termination of parental rights, there are two separate private interests involved: those of the parents and those of the child. *See State ex rel D.L.R.,* 08-1541 (La.12/12/08), 998 So.2d 681. A parent has a natural and fundamental liberty interest in the continuing companionship, care, custody, and management of their children's lives which warrants great deference. *See Id.* In opposition to the parent's interest is the child's interest "in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care." *State ex rel. J.M.,* 02-2089, p. 8 (La.1/28/03), 837 So.2d 1247, 1252. In termination proceedings, the interest of the parent must be balanced with the interest of the child, and "courts of this state have consistently found the interest of the child to be paramount over that of the parent." *Id.*

*State in Interest of M.C.*, 16-69, pp. 7-8 (La.App. 3 Cir. 6/1/16), 194 So.3d 1235, 1240-41. "Louisiana Children's Code Article 1015 sets forth eight grounds for termination of parental rights. Although the State need only establish one ground for termination, the trial court must also find that the termination is in the best

---

[7] We note that there are no cases under La.Ch.Code art. 1033 explaining what constitutes "prima facie proof." BLACK'S LAW DICTIONARY (10th ed. 2014) defines "prima facie evidence" as "[e]vidence that will establish a fact or sustain a judgment unless contradictory evidence is produced" while "clear and convincing evidence" is defined as "[e]vidence indicating that the thing to be proved is highly probable or reasonably certain, . . . a greater burden than preponderance of the evidence, the standard applied in most civil trials, but less than evidence beyond a reasonable doubt, the norm for criminal trials." This court applied a similar definition in *Artificial Lift, Inc. v. Production Specialties, Inc.*, 626 So.2d 859, 862 (La.App. 3 Cir. 1993), *writ denied*, 634 So.2d 394 (La.1994), where we stated that prima facie evidence is "evidence sufficient to establish a given fact and which, if not rebutted or contradicted, will remain sufficient."

interest of the child[ren]. . . ." *State in Interest of J.K.G.*, 11-908, pp. 5-6 (La.App. 3 Cir. 1/11/12), 118 So.3d 10, 14.

In this matter, the DCFS sought termination of T.A.'s parental rights to G.M.A. and K.K.A. on the basis of La.Ch.Code art. 1015(4) and (5) and La.Ch.Code art. 1036. According to La.Ch.Code art. 1015,

> The grounds for termination of parental rights are:
>
> . . . .
>
> (4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
>
> . . . .
>
> (b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
>
> (c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.
>
> (5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

Louisiana Children's Code Article 1036, titled "Proof of parental misconduct," provides, in relevant part:

> C. Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:
>
> (1)   The parent's failure to attend court-approved scheduled visitations with the child.

(2)     The parent's failure to communicate with the child.

(3)     The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.

(4)     The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.

(5)     The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6)     The parent's lack of substantial improvement in redressing the problems preventing reunification.

(7)     The persistence of conditions that led to removal or similar potentially harmful conditions.

D.     Under Article 1015(5), lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidenced by one or more of the following:

(1)     Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.

(2)     A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.

(3)     Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.

As mentioned previously, the only witness to testify at the trial was Ms. West, the foster care worker for G.M.A. and K.K.A. and their parents. Ms. West stated that she was assigned to this case in June of 2014. At that time, T.A.'s case plan required that she maintain housing and legal income, make parental contributions of $25 per child per month, complete a sixteen-week nurturing parenting program, attend all Family Team Conferences, resolve her

9

legal issues, undergo a mental health assessment and follow all recommendations, and submit to drug screens. Ms. West explained that T.A. had not maintained housing since the first of two incarcerations that began in December of 2014. Ms. West stated that T.A. worked at the Isle of Capri until her first incarceration and later at a Days Inn from approximately October until November of 2015, but T.A. never turned in any check stubs nor did she provide any parental contributions.

According to Ms. West, T.A. enrolled in a parenting class on October 7, 2014, but she was discharged on November 4, 2014, due to lack of attendance and participation. Although T.A. was re-referred to the program in February of 2015, she was discharged after missing the first two group sessions, and after her second incarceration in March of 2015, she never resumed the program.

Ms. West explained that when T.A. was given a random drug screen on September 4, 2014, she tested positive for cocaine, benzodiazapines, marijuana, and extended opiates. Because T.A. did not go to an October 22, 2015 court-ordered drug screen, the results were presumed positive, and according to Ms. West, DCFS policy required that she be assessed to determine whether she needed treatment for drug addiction.

When asked about whether T.A. had seen her children since she got out of jail in June of 2015, Ms. West stated that T.A. had visited twice with G.M.A. alone, and once with G.M.A. and K.K.A. since they had entered the State's custody. Ms. West explained that G.M.A., who is currently eight years old, had been placed in an adoptive home since late October of 2014, that she had adjusted well to that placement, and that she was doing good in school, but that she attended weekly counseling to deal with issues related to her past sexual abuse. With regard to three-year-old, K.K.A., Ms. West explained that he too had been placed in an

10

adoptive home since the end of October 2014, where he is very happy to be living the country life. Should they be freed for adoption, Ms. West was confident that G.M.A. and K.K.A. would both be adopted by the families where they were currently placed. Further, Ms. West believed that it was in the best interest of G.M.A. and K.K.A. that T.A.'s parental rights to them be terminated.

Upon cross-examination by T.A.'s attorney, Ms. West stated that she believed that T.A. had no current means of transportation, but T.A. was aware that if she contacted the DCFS, transportation would be arranged for her. Ms. West also stated that G.M.A. had told her that T.A. spoke to her by telephone approximately once a month. And while she believed that G.M.A. wanted to be reunited with T.A., Ms. West had spoken to G.M.A. about the possibility of her not being able to "go home with mommie," and G.M.A. expressed that she would want to stay with her adoptive mother. Finally, Ms. West explained that while she believed that T.A. could have worked her case plan, she apparently had no desire to do so.

At the close of evidence in the termination trial, the trial court stated the following with regard to T.A.:

> It's clear that she had very little contacts with either of her kids, even less with [K.K.A.]. She's not presented any evidence of housing. She's not shown interest even to the point of showing up for court or responding to the efforts of her lawyer to notify her of court.
>
> She's not made any parental contributions, which by itself is a big factor, but added to the fact that there's evidence that she was employed -- and we're talking about $50 a month -- is a strong indication of her lack of willingness to work a case plan or to accept the responsibilities of a parent.
>
> She certainly has not worked any or much of her case plan, certainly no significant portion of her case plan, and there's no reason to expect that that would change . . . within any reasonable period of time.

The testimony, I think, was clear that [G.M.A.] does have a relationship or wants to have a relationship with her mother, but as I stated, [T.A.] has demonstrated that she is not willing to do what's necessary to make that happen.

You know, kids love their parents, . . . but at times it's just in those kids[,] best interest that that relationship be severed, and that's an unfortunate fact and it's difficult to understand, but it's one we have to accept, and I think this is one of those cases where certainly the ultimate issue is not whether or not the kids love their mom, because they do -- and kids do that, no matter what, but it's what is in their best interest.

[G.M.A.] has apparently had many, many issues to deal with and seems to be doing better, and certainly her future looks better in her potential adoptive home than it would in an effort to continue to try to revive or restore a relationship with her mother.

As for [K.K.A.] he's also in an adoptive home, and he seems to be doing very, very well.

The Court finds that the State -- well, first of all, I think it's important and it's required to state that the Court has considered each of these kid's situations separately when you talk about best interest.

And with that, I find that the State has met its burden of establishing the grounds set forth for termination, by clear and convincing evidence, and it is also in the best interest of the child that the parental rights of [T.A.] to both of the children . . . be terminated at this time and that the children be freed for adoption.

After a review of the evidence and testimony presented at the termination hearing, we conclude that the State presented more than prima facie proof that T.A. failed to make significant contributions to the care and support of either G.M.A. or K.K.A. and that T.A. failed to maintain significant contact with either of them in excess of the six-month periods found in La.Ch.Code arts. 1015(4)(b) and 1015(4)(c). We, likewise, conclude that the State presented more than prima facie proof that in the more than one year since G.M.A. and K.K.A. had been removed from T.A.'s custody, T.A. had not substantially complied with any of her case plan and that there was no "reasonable expectation of significant improvement in

12

[T.A.'s] conduct in the near future," despite Ms. West's opinion that T.A. was capable of working her case plan had she so desired. La.Ch.Code arts. 1015(5) and 1036(D). On the other hand, Ms. West testified that eight-year-old G.M.A. and three-year-old K.K.A. were happy and thriving with their foster families and that those families would likely adopt them if T.A.'s parental rights were terminated.

When the Termination Petition was filed in July of 2015, G.M.A. and K.K.A. had been in the State's custody for over one year, with G.M.A. having been in custody for forty-eight of the previous fifty-five months. Both G.M.A. and K.K.A. were still in the State's custody at the time of the December 1, 2015 trial. The supreme court has directed us to balance T.A.'s interest in continuing her parental relationship with G.M.A. and K.K.A. against each of their interests in having continuous, stable, and secure relationships in homes where they will consistently receive the proper care that they deserve. *State in Interest of M.C.*, 194 So.3d 1235. The supreme court has further directed us that each child's best interest takes precedence over that of his or her parent. *Id.* After having performed the required balancing test, we conclude that the State proved that termination of T.A.'s parental rights to G.M.A. and K.K.A. would be in the best interest of both of the children. Accordingly, we find no manifest error in the trial court's decision to terminate T.A.'s parental rights as to both G.M.A. and K.K.A. and to certify them both for adoption. T.A.'s third assigned error lacks merit.

*Denial of the Motion for New Trial*

In her appellant brief, T.A. asserts that the trial court erred by denying her motion for new trial. She contends that the State undertook an "affirmative obligation" to provide her with transportation to the termination trial, that it had an "obligation to timely notify her counsel that the State could not contact her to

provide such transportation," and that the trial court erred in denying her motion for new trial when the State failed to provide her with transportation and to notify her counsel of the same. Significantly, however, she fails to cite any statutory or case law with regard to the grounds for granting a new trial and/or with regard to the appropriate standard of review of a trial court's ruling on a motion for new trial. We also note that in the motion for new trial that T.A. filed in the trial court, she failed to refer to any of the statutory grounds for a new trial.

> Louisiana Code of Civil Procedure Article 1972 lists the peremptory grounds for a motion for new trial, as relevant herein:
>
>> A new trial shall be granted, upon contradictory motion of any party, in the following cases:
>>
>> (1) When the verdict or judgment appears clearly contrary to the law and the evidence.
>>
>> (2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
>
> Further, La.Code Civ.P. art. 1973 addresses the discretionary grounds for a motion for new trial, stating that "[a] new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law." In order to meet his or her burden of proof on a motion for new trial on the basis of newly-discovered evidence, the moving party must prove: (1) that the evidence was discovered after the trial; (2) that the new evidence is not cumulative; (3) that the new evidence would tend to change the result of the case; and (4) that the new evidence could not have been discovered with due diligence before the trial was completed. *Bennett v. Porter*, 10-1088 (La.App. 3 Cir. 3/9/11), 58 So.3d 663. In reviewing a trial court's ruling on a motion for new trial, the applicable standard of review is whether the trial court abused its discretion.

*Holloway Drilling Equip., Inc. v. Bodin*, 12-355, pp. 12-13 (La.App. 3 Cir. 11/7/12), 107 So.3d 699, 709-10.

Both T.A. and Ms. West testified at the January 22, 2016 hearing on T.A.'s motion for new trial. Upon questioning by her counsel, T.A. attested to the truth of

14

an affidavit which she filed in support of her motion for new trial. That affidavit provided, in pertinent part, that:

4. Affiant resides at 1449 Jolene Road, Basile, Louisiana, 70515 and has resided there for approximately the last 6 months.

5. Affiant was unable to make the hearing due to the failure of the State of Louisiana to respond to her request for transportation on December 1, 2015.

6. Affiant called Lazetter West at 337-491-2534 the State of Louisiana, Department of Child and Family Services on November 22 and 25, 2015 to arrange a ride, there was no answer and no one returned her call.

7. Affiant had no other means to travel to Lake Charles on December 1, 2015.

8. Affiant desires to testify in person as to the matters at issue and retaining her parental rights.

Upon cross-examination by counsel for the DCFS about how she got to her counsel's office to sign her affidavit on December 4, 2015, and how she got to the hearing that day concerning her motion for new trial, T.A. explained that she had received rides from her close friends and from one of the men whom she was dating. T.A. also stated that after not being able to get with Ms. West, she had left a message at her counsel's office prior to the December 1, 2015 trial date, but he had not returned her call.

Ms. West testified that her work telephone number had changed on October 19, 2015, after she received a promotion. She stated, however, that she had left a message on the voicemail of her former telephone number stating that her number had changed and giving the number where she could be reached. Ms. West further stated that, after her promotion, she had checked her old telephone number for messages daily and that she did not receive a message from T.A. until about December 19, several weeks after the December 1, 2015 trial. Ms. West

15

acknowledged that she had received a letter faxed by T.A.'s counsel on November 5, 2015, requesting that she arrange transportation for T.A. to get to the trial and that she had reserved a vehicle to use on the trial date. Ms. West stated that after not being able to reach T.A. by telephone, she called the telephone number of the house in Basile where T.A. had been residing, but was told by a Ms. Clump that T.A. had not resided there for over a month and that T.A. had not given her a forwarding telephone number. Ms. West also stated that she had tried to contact T.A. at Days Inn, T.A.'s former place of employment, but she was told that T.A. no longer worked there. Ms. West testified that she called T.A. the day before trial in another attempt to verify when and where she would pick up T.A. for trial, but that she was again unable to reach T.A. Ms. West explained that when she spoke with T.A. in late December of 2015 and asked for her new address, T.A. claimed to still be living in Basile, even after Ms. West told her that Ms. Clump had denied that T.A. still lived there. Upon cross-examination, Ms. West acknowledged that she had not called T.A.'s counsel to inform him that she had been unable to contact T.A. regarding transportation to the trial.

At the close of the hearing, the trial court issued oral reasons denying T.A.'s motion for new trial, stating:

> It is clear that the DCFS worker did not call the lawyer for [T.A.] to tell him that she could not locate [T.A.] to pick her up from wherever she was to bring her to trial. However, the worker did attempt, and I'm satisfied that the worker did attempt to contact [T.A.] and was unable to do so and actually contacted the third person that was involved in the matter who also did not know where [T.A.] was.

> I am not going to expand the duties of the DCFS workers to call the lawyers to tell them that they can't get in touch with the clients to pick them up to bring them to court. I think that goes above and beyond what should be expected of them.

Also I find that the testimony of the DCFS worker, Ms. West, was more detailed and credible th[a]n that of [T.A.] when it comes to the issue of who was called when and what messages were left, et cetera.

And certainly, while finality is important in these cases and fairness is also important, we have to balance those. And while I can't imagine anything more important than getting to court for termination of parental rights trial, I am going to find that the burden was not met by [T.A.] and deny the motion for the new trial at this time.

As correctly noted by the trial court at the new trial hearing, it had discretion regarding whether to grant the motion because T.A. had not asserted a peremptory ground requiring that a new trial be granted. As is evident from the above-quoted oral reasons for judgment, the trial court gave thoughtful consideration to all the evidence presented at the hearing. Given all the circumstances, most notably the disparity in the testimony between Ms. West and T.A., we find no abuse of discretion in the trial court's denial of the motion for new trial. Thus, there is no merit to T.A.'s final assignment of error.

## CONLUSION

For the foregoing reasons, the judgment permanently terminating T.A.'s parental rights to G.M.A. and K.K.A. and certifying them available for adoption is affirmed. The judgment denying T.A.'s motion for new trial is also affirmed. Costs of this appeal are assessed against T.A.

**AFFIRMED.**