NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

23-462

DONALD E. WAGONER

VERSUS

KRISANN J. MUNOZ

**********

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 97,845 B
HONORABLE C. ANTHONY EAVES, DISTRICT JUDGE

**********

D. KENT SAVOIE
JUDGE

**********

Court composed of D. Kent Savoie, Candyce G. Perret, and Ledricka J. Thierry, Judges.

AFFIRMED AS AMENDED.

**Mary K. Beaird**
**Attorney at Law**
**303 E. Texas Street**
**Leesville, LA 71446**
**(337) 944-0299**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Krisann J. Munoz**

**Elvin Fontenot, Jr.**
**Attorney At Law**
**110 E. Texas Street**
**Leesville, LA 71446**
**(337) 239-2684**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Donald E. Wagoner**

**SAVOIE, Judge.**

Krissan Munoz (Munoz) appeals the trial court's judgment granting Donald Wagoner's (Wagoner's) motion seeking to modify custody and find Munoz in contempt, awarding Wagoner with sole custody of the parties' two minor children, and awarding Wagoner with $9,610.83. For the following reasons, we affirm the modification of custody and finding of contempt, but we amend the monetary award in favor of Wagoner to $6,610.83.

## FACTUAL AND PROCEDURAL BACKGROUND

Wagoner and Munoz were married on November 12, 2015, and they had two children.[1] On August 6, 2019, Wagoner filed for divorce. After receiving service through a court-appointed curator, Munoz filed exceptions of subject matter jurisdiction and lis pendens on November 20, 2019. Munoz alleged that she was domiciled in Madera County, California, that California was the home state of the children, and that there was a pending action for divorce in California. Minutes from a court hearing in the Louisiana trial court held December 12, 2019, indicate that a telephone conference took place between the Louisiana and California judges, "California declined jurisdiction[,]" and "Louisiana accept[ed] jurisdiction."

Thereafter, several years of litigation involving custody of the parties' children ensued in the Louisiana trial court. During this time, Munoz lived in both California and Georgia, while Wagoner lived in Louisiana, and this caused conflict among the parties with respect to exchanging the children. An interim custody order was signed August 4, 2020, awarding joint custody and designating Wagoner as the

---

[1] The record reflects that a third child was born during the parties' marriage but was found by the court to not be Wagoner's child. The trial court signed a judgment granting Wagoner's request for disavowal on May 26, 2020.

interim domiciliary parent. In June 2021, the trial court indicated on the record that the parties were to meet to exchange the children in either Dallas, Texas, or Tuscaloosa, Alabama, unless otherwise agreed.

On November 30, 2021, Wagoner sought and obtained a Civil Warrant for the return of the children after Munoz failed to return the children to the designated location after visiting with them for Thanksgiving. On December 1, 2021, Munoz filed a motion seeking to quash the civil warrant, and the trial court denied the motion on December 13, 2021. Also on December 13, 2021, Wagoner filed a Rule for Contempt regarding Munoz's failure to return the children.

A trial on custody and cross motions for contempt was held January 26, 2022. At that time, Munoz lived in California, and Wagoner lived in Louisiana. Both parties were present at trial, along with their counsel. Following trial, the trial court rendered a judgment awarding joint custody, designating Wagoner as the domiciliary parent, and denying both parties' motions for contempt. The trial court also admonished the parties' actions, noting that they were more focused on "making each other mad[,]" rather than "do[ing] what's best for the child[ren]." With respect to exchanging the children, the trial court stated:

> Each party . . . will bare [sic] the cost of travel to pick the child[ren] up. Which means, if it's Miss Munoz's time to exercise visitation, she has to come to Louisiana or wherever Mr. Wagoner may be. And likewise, Mr. Wagoner, when it's his turn. So, you can't get alon[g], that's obvious[]. You can't even meet in Dallas or Tuscaloosa without problems. . . . We are going to solve all that nonsense about exchange points and trying to get things changed and all that. . . . You got to stop your pettiness. Ya'll got to grow up. Unfortunately, neither one of you up to that point have [] shown a willingness to do that. . . .
>
>     . . . .
>
>     . . . [W]hen that judgment is prepared that is what I want to call the law of the case. You better follow it, but you can deviate from it when you agree to it.

. . . [W]hen Mr. Wagoner has to pick the kids up, he's got to be at Madera, California if that's where Miss Munoz - - so, you got to let them know where you live, okay. Mr. Wagoner, you've got to let her know where you live, okay.

A judgment in conformity with the trial court's ruling was filed March 11, 2022. It provided that each year Munoz was to have two weeks of visitation in June, two weeks of visitation in July, and one week of visitation in August, and that Munoz was to advise Wagoner by April 1 of each year as to when she wished to exercise that visitation. It also stated that "each party shall be responsible for picking the children up to begin visitation[.]" The judgment and attached custody implementation plan further outlined holiday visitation, as well as other issues such as communication between the parties.

On December 28, 2022, Wagoner filed a Petition for Civil Warrant alleging that Munoz's last known address was in California, that Munoz's mother picked the children up for the Christmas holiday on December 20, 2022, and that Munoz refused to return the children on December 24, 2022, when the visitation period was over. The trial court signed the requested Civil Warrant on December 28, 2022.

Wagoner then filed a Motion for Modification of Judgment of Custody and Rule for Contempt on January 11, 2023, alleging that "Munoz has a pattern of conduct where she secrets the children and does not return them as per the Judgment and Joint Custody Implementation Plan." He further alleged that on two occasions, he travelled to California to pick up the children after Munoz's visitation ended, but that Munoz refused to return the children and, as a result, the children had not returned to school and missed doctor appointments. Wagoner also alleged that Munoz attempted to thwart Wagoner's custody by filing legal proceedings in inappropriate forums, including a domestic abuse petition in California, which was

3

dismissed, and an action in Colorado based upon an incident in September 2022 during an exchange of the children and Munoz's refusal to return the children. Wagoner sought sole custody with supervised visitation to occur only in Louisiana.

The trial court signed an order January 12, 2023, appointing a curator to represent Munoz and setting the matter for hearing on January 23, 2023. The curator was served with the Motion for Modification of Judgment of Custody and Rule for Contempt. On January 17, 2023, the curator provided the pleadings via email to Munoz and also spoke to Munoz on the phone regarding the proceedings and the January 23, 2023 hearing date.

On January 20, 2023, Munoz submitted a pro se motion seeking to continue the January 23, 2023 hearing date. She alleged that she was ordered to appear in Pueblo Combined Court in Pueblo, Colorado on January 24, 2023, regarding an action she filed that sought a protective order against Wagoner. She further alleged that she had also filed a Request for Domestic Violence Order on January 19, 2023, in Madera County, California, but that it was denied given the pendency of the Louisiana and Colorado proceedings. Her motion to continue further stated that she was seeking a continuance until the Colorado, California, and Louisiana courts could schedule a conference, and also that she needed a continuance to obtain legal counsel. The trial court set the motion for hearing on January 23, 2023, along with Wagoner's motion to modify custody.

A hearing was held on January 23, 2023. The court-appointed curator appeared on behalf of Munoz and stated that Munoz chose not to be present. Wagoner's counsel appeared on his behalf, and Wagoner was also present. The trial court first considered Munoz's motion to continue, which was objected to by Wagoner's counsel. The trial court stated as follows:

4

[S]o I'm just going to clarify for the record, she[,] meaning Ms. Munoz, sent something to me via UPS . . . . It was a pleading . . . filed in the state of Colorado in Pueblo County, Colorado, and it appears to be in our terminology a protective order against Mr. Wagoner. So, because, I have received those I'm going to file those into the record along with the UPS envelope as well. . . . [S]he filed something December 20th, then the other thing came through January 3rd - - of a particular[] note . . . in the protective order that she filed in the state of Colorado at no point in the documents that she sent the Court did she ask for custody of the two children in question here in Louisiana. . . . Other protected persons are [M. W.], and . . . that was the child that was disavowed [by Wagoner], and there is a different father to that child. So it's not subject to the litigation in hand. . . . So, by her own pleadings she is only asking in Colorado for custody of the child that she has custody of. Which is not Mr. Wagoner's child . . . .

. . . .

. . . [A]nd she [Munoz] is asking for a continuance based upon litigation pending in other states. For the record, the litigation filed in . . . California happened after the litigation was initiated here. I mean, we've had jurisdiction on this case for years, and legally we keep jurisdiction. . . . and she ask[ed] for custody in California, but that was denied. And, so . . . there is nothing from another state under the UCCJA granting even temporary custody, which is allowed under certain circumstances[,] to Ms. Munoz. . . . I don't have an order from a court saying that . . . the mom has been granted temporary custody in another state [of the two children subject to the instant litigation]. I know we have service based upon the curator's answer being filed . . . .

. . . .

. . . So I'm going to deny the motion to continue filed by Ms. Munoz in this matter. Unfortunately, this isn't the first time that we've went down this road prior to the considered decree. Not speaking to the validity of anything that may[]be pending in another state, but just - - she's not returning [the] kids in the past, and I've had to sign civil warrants . . . . I'm going to deny the motion to continue[.]

The trial court then proceeded with hearing testimony and evidence on Wagoner's motion seeking to modify custody and for contempt. In its oral reasons for granting the requested relief, the trial court stated:

There was never an issue of custody brought up involving these two children subject to the litigation present before the [c]ourt today until it was raised here again [by] Mr. Wagoner . . . . Then when Ms. Munoz became aware of it she went and filed on the 19th of January in

5

California. And unfortunately, this is a pattern of hers over the course of the years that I've dealt with her. Not necessarily protective orders, but either one, not returning the children on numerous occasions and also instituting litigation in several states at a time. And, so . . . I'm going to find her in contempt. I'm going to order her to pay the $9,610.83 as attorney fees and reimbursement to Mr. Wagoner. She just can't keep doing this. This is repeated, repeated, repeated, repeated and at some[]time she has to pay. I don't know what else to do with her. . . . [B]ecause of the repeated - - first of all, this is a considered decree. I heard evidence, and I'm going to modify that considered decree. I'm going to limit her visitation to . . . Louisiana. . . . Mr. Wagoner is now married, [so] it's going to occur in whatever state that [Mr. Wagoner] may be so we don't have to come back to court. You know, if Mr. Wagoner's wife gets back from deployment in two years, and she is stationed in, I don't know, Alaska, well it will have to occur in Alaska. . . . And, so, and I'm going to grant the sole custody. At some point, Ms. Munoz has to stop, and she will not stop unfortunately.

The trial court signed a judgment on January 23, 2023, denying Munoz's motion to continue, awarding Wagoner with sole custody, ordering that Munoz's visitation was to be supervised by Wagoner and take place in Louisiana or any other state where Wagoner resides, finding Munoz in contempt, and ordering Munoz to pay Wagoner $9,610.83 in attorney fees and expenses Wagoner incurred in attempting to retrieve his children from the physical custody of Munoz.

Munoz appeals. On appeal, she asserts the following as assignments of error:

1. Whether the trial court abused its discretion when it denied Krisann Munoz's motion to continue when she resides in California and was served on January 17, 2023, for trial to commence on January 23rd, 2023, and was previously ordered on January 3rd, 2023, to attend court in Colorado on January 24, 2023, in violation of her due process rights and jurisprudence that supports that an out-of-state litigant is required to be served notice at least ten days prior to commencement of trial.

2. Whether the trial court abused its discretion when it awarded Donald Wagoner sole custody with no finding that the current custody arrangement was so deleterious to the health and welfare of the children so as to warrant a modification and sole custody award, and further inhibited Ms. Munoz['s] visitation with the children by limiting her visitation to occur only in the state where Donald Wagoner is domiciled.

3. Whether the trial court abused its discretion when it awarded Donald Wagoner reimbursement of $9,610.83, including a reimbursement for attorney fees for an out of state attorney in another case when no receipt was presented and for reimbursement of the entire $6,000 for [Wagoner's counsel] when at least a portion of the fee was used for the modification and not in relation to the contempt itself.

## ANALYSIS

*Denial of the Motion to Continue*

"A continuance may be granted in any case if there is good ground therefor."

La.Code Civ.P. art. 1601.

> A continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance.

La.Code Civ.P. art 1602.

A trial court's denial of a motion to continue will not be disturbed on appeal "absent a clear abuse of discretion." *State in Interest of G.M.A.*, 16-405, p. 4 (La.App. 3 Cir. 9/28/16), 201 So.3d 1014, 1019, *writ denied*, 16-1945 (La. 11/18/16), 210 So.3d 290 (quoting *State in Interest of J.T.*, 11-1646, p. 8 (La.App. 4 Cir. 5/16/12), 94 So.3d 847, 853.)

In her first assignment of error, Munoz argues that the trial court abused its discretion in denying her motion to continue because service of Wagoner's motion was not properly made. However, an objection regarding insufficiency of service of process is properly raised through a declinatory exception in accordance with La.Code Civ.P. art. 925(A)(2), and exceptions to contradictory motions "shall be filed prior to the time assigned for, and shall be disposed of at, the trial." La.Code Civ.P. art. 2593. Because neither Munoz, nor the curator who appeared on her behalf at the hearing, submitted an exception of insufficiency of service of process prior to

7

trial, the exception was waived and may not be asserted for the first time on appeal. See La.Code Civ.P. arts. 2593, 2596, and 925(C).

Further, Munoz does not suggest, and the record does not reflect, that any grounds requiring the granting of a continuance contemplated by La.Code Civ.P. art. 1602 exist in this case. Rather, Munoz suggests that the trial court abused its discretion in denying the requested continuance because she had a court appearance scheduled in another case in Colorado the following day, and because she needed time to obtain counsel. However, the trial court provided extensive reasons as to why it denied Munoz's request, and we fail to find an abuse of discretion on the part of the trial court. Therefore, this assignment of error lacks merit.

*Modification of Custody*

The Louisiana Supreme Court stated in *Mulkey v. Mulkey*, 12-2709, pp. 9–15, 118 So.3d 357, 364–367 (footnotes omitted):

> The primary consideration in a determination of child custody is the best interest of the child. This applies not only in actions setting custody initially, but also in actions to change custody. . . . In an action to change custody rendered in a considered decree, additional jurisprudential requirements set forth by this court in *Bergeron v. Bergeron*, [492 So.2d 1193 (La.1986),] are also applied. . . . [T]he burden of proof on the party seeking to modify custody is dictated by *Bergeron*.

> . . . Recognizing that the heavy burden of proof rule could inflexibly prevent a modification of custody that is in the child's best interest, and also cognizant of the need to protect children from the detrimental effects of too liberal standards in custody change cases, we restated the burden of proof rule as follows:

>> When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.

8

[*Id.* at 1200]. Thus, when a party seeks to change custody rendered in a considered decree, the proponent of change must not only show that a change of circumstances materially affecting the welfare of the child has occurred since the prior order respecting custody, but he or she must also meet the burden of proof set forth in *Bergeron*.

. . . .

Every child custody case must be viewed based on its own particular facts and relationships involved, with the goal of determining what is in the best interest of the child. Our decision in *Bergeron* was not meant to tie the hands of a court when the facts and circumstances of a case and the needs of a child necessitate a change in custody.

Whether the party seeking modification has met this burden "is a question of fact which will not be disturbed absent manifest error." *DeSoto v. DeSoto*, 94-1048, p. 2 (La.App. 3 Cir. 3/1/95), 651 So.2d 497, 498.

Therefore, in order to reverse a factfinder's determination, this court must (1) find from the record that a reasonable factual basis does not exist for the trial court's finding and (2) determine that the record establishes that the finding is clearly wrong (manifestly erroneous). *Stobart v. State, Department of Transportation and Development*, 617 So.2d 880 (La.1993). We are bound to review the record in its entirety and resolve the issue of "not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Id*. at 882. If the factfinder is faced with choosing between two permissible and conflicting views of the evidence, his decision, especially when based on reasonable evaluations of credibility and reasonable inferences drawn from the evidence, should not be reversed unless it is clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

*Oliver v. Oliver*, 95-1026, pp. 17–18 (La.App. 3 Cir. 3/27/96), 671 So.2d 1081, 1091–92.

On appeal, Munoz argues that the trial court failed to make a finding that the current custody arrangement was deleterious to the children's welfare and warranted a change in custody, that it failed to give appropriate weight to the Colorado court pleadings involving a protective order attached to Munoz's motion to continue, and that it failed to consider Wagoner's aggressive behavior toward Munoz. In response,

Wagoner points out that Munoz failed to appear at the hearing, that there was no evidence establishing that Wagoner was aggressive towards Munoz, that neither the Colorado nor California actions resulted in findings of domestic violence or abuse, and that the Louisiana trial court considered, and rejected, similar allegations of violence Munoz made in connection with the January 26, 2022 custody trial.

At the January 23, 2023 hearing on Wagoner's motion to modify custody and for contempt, Wagoner testified that since the March 2022 custody judgment, he and Munoz had agreed for exchanges of the children to take place at the Dallas airport and at the San Francisco airport with respect to summer visitation, but, despite this, Munoz would change the agreed-upon locations and times to exchange the children with respect to every visitation that had occurred since the judgment.

Wagoner also testified that Munoz retrieved the children from him on December 20, 2022, and brought them to California. He said that he then went to California on December 24, 2022, to retrieve them from Munoz, but Munoz did not return the children. He said that since December 2022, he has gone to California twice in attempts to retrieve the children, but he was unsuccessful. Wagoner also indicated that as of the January 2023 hearing, the children were still with Munoz, and, to Wagoner's knowledge, had not been attending school. Wagoner also indicated that while it was his understanding that the children were living at Munoz's parents' house in Madera California, he was not sure of their whereabouts. He stated:

> I actually had four wellness checks made, and throughout the time of me being in California and as far as the police department, they w[ere] aware - - I made four wellness checks whenever I was there. And that's part of whenever I first went to California and the second time I went to California and no police officer was able to tell me that they had even seen my children at any of the locations that I had. And the one time that I did accompany the police officer we still never even saw Ms. Munoz or either of my children.

Wagoner also testified that he was "very concerned" regarding the welfare of the children and what they were going through by not being back in his home where they resided, and that he "know[s] for a fact they don't even have their o[w]n beds over there."

With respect to Munoz's allegations filed in connection with the Colorado proceedings, Wagoner noted that many of the allegations were previously considered, and rejected, by the trial court in connection with the January 2022 trial on custody and cross motions for contempt.[2]

Given Munoz's failure to return the children to Wagoner in accordance with the March 2022 judgment, enroll them in school, or provide Wagoner with information concerning their whereabouts, we cannot say that, under the circumstances of this case, the trial court was manifestly erroneous in granting Wagoner's request to modify custody, awarding Wagoner with sole custody, and limiting Munoz's visitation to take place under Wagoner's supervision in Louisiana or wherever Wagoner resides. While the trial court did not specifically state that "the present custody is so deleterious to the child as to justify a modification", it clearly considered *Bergeron*, and the record supports the trial court's apparent conclusion that modification of custody was appropriate thereunder.

*Contempt*

In connection with her third assignment of error, Munoz challenges the trial court's finding that she was in contempt of court. Louisiana Code of Civil Procedure Article 221 defines contempt of court as "any act or omission tending to obstruct or

---

[2] According to the record, Munoz's allegations filed in Colorado involved an incident that allegedly occurred in October 2022. In January 2022, the Louisiana trial court appears to have considered some allegations about alleged incidents in Germany and possibly New Orleans.

interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." "A constructive contempt of court is any contempt other than a direct one." La.Code Civ.P. art. 224. Constructive contempt includes "[w]ilful disobedience of any lawful judgment, order, mandate, writ, or process of the court[.]" La.Code Civ.P. art. 224(2).

A trial court's determination as to whether or not a party is in contempt of court for disobeying a court order is reviewed for an abuse of discretion. *6th Ward/Crowley Gravity Drainage Dist. v. Benoit*, 17-82 (La.App. 3 Cir. 10/4/17), 229 So.3d 590. "However, the trial court's 'predicate factual determinations are reviewed under the manifest error standard.'" *Id*. at 596 (quoting *Capital City Press, L.L.C. v. La. State Univ. Sys. Bd. of Supervisors*, 13-1803, 13-1804, p. 7 (La.App. 1 Cir. 12/30/14), 168 So.3d 669, 674).

Munoz argues that there is insufficient evidence in the record to support a finding of contempt. Specifically, she argues that she did not intentionally, or with malintent, refuse to return the children to Wagoner, but rather did not return the children because she was caused to file a protective order against Wagoner in Colorado. However, the trial court thoroughly addressed the Colorado proceedings, noting that they did not involve the parties' children, and found that Munoz's failure to return the children in accordance with the custody judgment, after having failed to return the children on previous occasions, warranted a finding of contempt. We find no manifest error in the trial court's factual finding that Munoz violated the March 2022 custody judgment by failing to return the children, and no abuse of discretion in finding Munoz in contempt given the circumstances.

On appeal, Munoz also takes issue with the trial court's judgment ordering her to pay Wagoner $9,610.83 as a result of finding her in contempt.

Louisiana Revised Statutes 9:346 states in pertinent part:

> A. An action for the failure . . . to allow child visitation, custody or time rights pursuant to the terms of a court-ordered schedule may be instituted against a parent. The action shall be in the form of a rule to show cause why such parent should not be held in contempt for the failure and why the court should not further render judgment as provided in this Section.
>
> . . . .
>
> C. If the action is for the failure to allow child custody, visitation, or time rights pursuant to a court-ordered schedule, and the petitioner is the prevailing party, the defendant shall be held in contempt of court and the court shall award to the petitioner:
>
> (1) A reasonable sum for any actual expenses incurred by the petitioner by the loss of his visitation, custody or time rights.
>
> (2) Additional visitation, custody or time rights with the child equal to the time lost.
>
> (3) All attorney fees and costs of the proceeding.
>
> (4) All costs for counseling for the child which may be necessitated by the defendant's failure to allow visitation, custody, or time rights with the child.
>
> . . . .
>
> H. A pattern of willful and intentional violation of this Section, without good cause, may be grounds for a modification of a custody or visitation decree.

The amount Munoz was ordered to pay to Wagoner as a result of her contempt included $6,000.00 for attorney fees in connection with the instant proceeding, $3,000.00 as reimbursement of undocumented fees Wagoner alleged to have paid to an attorney in Colorado, and $610.83 as reimbursement for documented expenses Wagoner incurred while traveling to California in efforts to retrieve his children.

While the trial court was authorized to order Munoz to pay Wagoner attorney fees incurred in connection with the instant proceeding and Wagoner's travel costs associated with attempting to retrieve the children from California, it was not

13

authorized to order reimbursement of Wagoner's undocumented attorney fees allegedly incurred in connection with the Colorado proceedings. Therefore, we amend the judgment to award Wagoner with $6,610.83

## DECREE

For the reasons stated above, we affirm the trial court's judgment modifying custody and finding Munoz in contempt, but we amend the trial court's monetary award in favor of Wagoner to $6,610.83. Costs of this appeal are assessed to Krisann Munoz.

**AFFIRMED AS AMENDED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2–16.3